C. E. WEBB and J. L. CONE and W. L. CONE, co-partners as CONE BROTHERS, for the Use and Benefit of C. E. WEBB, v. HILLSBOROUGH COUNTY, a Political Subdivision of the State of Florida.

175 So. 874.
Opinion Filed September 30, 1935.
Opinion on Rehearing Filed July 31, 1937.

472

*Hampton, Bull & Crom,* for Plaintiff in Error;

*John B. Sutton, H. C. Tillman* and *W. F. Himes,* for Defendant in Error;

*Kay, Adams, Ragland & Kurz, Wm. E. Kay, Thos. B. Adams, F. P. Fleming, J. S. Diver* and *Edwin Brobston* as *amici curiae.*

TERRELL, J.—This action was instituted by plaintiffs in error, as plaintiffs below, against defendant in error, as de-

474

fendant below, to recover damages for the breach of a contract to construct a public road. The declaration in substance alleges that on February 27, 1925, Hillsborough County entered into a written contract with Cone Brothers, a co-partnership composed of J. L. and W. L. Cone, to grade, pave, curb and improve part of a public road in Hillsborough County known as Cypress Street, the said road being outside the limits of a municipality.

It is also alleged that the contract was executed pursuant to Chapter 9316, Acts of 1923, and that payment for the labor and material expended in improving said road was made in certificates of indebtedness against the abutting property, that the said road was completed according to the terms of the contract, that it was accepted by the county, and the Board of County Commissioners of the County passed a resolution by which it was determined that the entire cost of improving said road was $206,131.09, which plaintiffs agreed was a reasonable value of the labor and material used by them in improving it.

It is also alleged that pursuant to the determination of the cost of said road the County Commissioners issued certificates of indebtedness against the abutting property in the sum of $206,131.09, that said certificates were delivered to the contractors, and that subsequently $15,041.69 was paid on the principal thereof, leaving due thereon the sum of $191,089.40, none of which has ever been paid, and that the County of Hillsborough is now enjoying and using the said improvements, that said certificates were payable in five years and were duly assigned to C. E. Webb.

It is also alleged that subsequent to the making of these improvements and the issuing of the certificates Chapter 9316, Acts of 1923, under which they were issued, was held invalid and inoperative by the Supreme Court of this State (Hillsborough County, et al., v. Temple Terrace Assets Co.,

Inc., 111 Fla. 368, 149 So. 473) and that by reason of that decision all certificates so issued to the plaintiffs in payment of said road are void and unenforceable and are worthless to the plaintiff. The declaration also challenges said certificates on the ground that two-thirds of the abutting owners on Cypress Street did not sign the petition asking for the improvement.

It is further alleged that prior to the institution of this action plaintiffs made demand in writing for payment of the balance due on said certificates and offered to surrender them to the county and being refused this action was instituted. There is attached to the declaration a bill of particulars setting up the total value of the material and labor furnished for grading, curbing, rock base, laying asphalt blocks, concrete pipe, catch basins, engineer's cost, overhead, and profit. Common counts for money payable, money found to be due, and for an account stated from defendant to plaintiffs were included in the declaration.

To the declaration defendants filed a demurrer in which they allege that it fails to state a cause of action, that the contract relied on is not binding, that the claim asserted was not presented to the Board of County Commissioners within one year from the date it became due, that the declaration shows on its face that plaintiffs have a valid lien upon all properties abutting on Cypress Street owned by those who signed the petition under which the paving was done, that the law under which the contract was executed is null and void, that said contract was entered into in violation of the budgetary laws of Florida, and that the moneys expended in paving Cypress Street were not expended for a public purpose but for the benfit of private individuals.

The demurrer to the declaration was sustained, the lower court holding that Chapter 9316, Acts of 1923, having been declared invalid, there can be no mistake of law or fact

which can entail liability against the county under the allegations of the declaration nor can liability be grounded on the general provisions of law prescribing the powers and duties of county commissioners in the matter of the construction and maintenance of roads. In the order sustaining the demurrer leave was granted to amend but plaintiffs declined and prosecuted the instant writ of error to this Court.

Out of the foregoing facts the first question with which we are confronted is whether or not Chapter 9316, Acts of 1923, having been declared invalid and the certificates of indebtedness issued thereunder non-enforceable, has plaintiff in error any right of action against Hillsborough County for labor and materials furnished in the execution of its contract.

Plaintiff in error contends for an affirmative answer to this question and relies on Harwell v. Hillsborough County, 111 Fla. 361, 149 So. 547, the pertinent part of which is as follows:

"A majority of the Court hold that under the authorities hereinafter cited where a county enters into a contract for work of a public character which it is fully authorized to pay for, and the contract has been executed and performed according to its terms, and the county has acknowledged its indebtedness under the contract by issuing its certificates of indebtedness to pay for the work done and material furnished, and is actually enjoying the fruits of the contractor's expenditures for labor and materials, which expenditures were made in good faith on the strength of the county's contract, that included an assumption of obligation to provide a means of payment according to the contract, after its actual execution, that recovery may be had against the county on a *quantum meruit* basis for the value of the work done and materials furnished to and accepted by the county

under such circumstances, where the county finds that it is unable to deliver valid certificates to pay for the work under the express contract."

In Harwell v. Hillsborough County the certificates involved were issued pursuant to contracts let and executed under Chapter 10145, Acts of 1925, which was in all material respects identical with Chapter 9316, Acts of 1923. The certificates involved in Harwell v. Hillsborough County were held to be invalid because of procedural defects, that is to say, that the requisite two-thirds of the owners of property abutting on the public road petitioned to be paved did not sign the petition therefor. The certificates in the instant case were adjudged invalid because of the invalidity of the Act under which they were issued (Chapter 9316, Acts of 1923). They were also challenged on the same grounds as those in Harwell v. Hillsborough County were challenged.

Defendant in error contends that in view of the invalidity of Chapter 9316, under which the certificates and contracts under review were executed, both were void *ab initio,* that the contracts were *ultra vires,* that the county was without authority to make them, that plaintiffs in error were on notice of this infirmity, and that consequently the fact that the contracts were performed and the county received material benefits therefrom in no way imposes liability on it.

We recognize the rule with reference to the non-enforceability of *ultra vires* contracts, including implied contracts growing out of them, discussed in City of Tulsa v. Malloy, *et al.,* 104 Okla. 281, 231 Pac. 256; Western Paint & Chemical Co. v. Board of Commissioners of Garfield County, 161 Okla. 300, 18 Pac. (2d) 888; Bartlett v. City of Lowell, 201 Mass. 151, 87 N. E. 195; Floyd County v. Oswego Bridge Co., 143 Ky. 693, 137 S. W. 237; Buchanan v. City of Litchfield, 102 U. S. 278, 12 Otto 278, 26 L. Ed. 138; McQuillin, *Municipal Corporations,* Vol. 3,

Par. 1365 (2d Ed.) ; Donnelley's *Law of Public Contracts,* Sec. 108; and many others.

While no rule of law is better settled than this one, like all others it has its exceptions or modifications which are as well recognized as the rule itself. This Court approved such an exception in Harwell v. Hillsborough County, *supra,* the effect of which was that if a county enters into a contract for a public work which it is authorized to construct and the contract is executed in good faith, after which it develops that the county cannot issue lawful certificates in payment therefor as contemplated when made, if the county is in the enjoyment of the fruits of the contractor's expenditure he may recover in an action against the county on a *quantum meruit* for the value of the work done and the materials furnished.

Appellee further contends that the rule applied in Harwell v. Hillsborough County, *supra,* cannot control the case at bar because Chapter 9316, Acts of 1923, under which the certificates were issued and the contract made, was not only void in its inception but it in terms made the abutting property owners liable, provided that no liability should rest on the county and provided a means of realizing on the certificates against the abutting owners in the event they were not paid.

We think this contention devoid of merit. The rule in Harwell v. Hillsborough County does not rest on the contract made with the County Commissioners, nor on the promise to pay the certificates, but on the fact that appellants in good faith expended their labor and material on a public project that the county was fully authorized to contract and pay for and which it is now actually in possession of and enjoying. In this connection it is not out of place to state that recovery on *quantum meruit* under this rule is limited to the funds, labor, and material expended on a pub-

lic project for which the county is authorized to contract and is enjoying the fruits of such expenditures and has no reference to funds wasted or expended on projects of a private character or in which the public is not interested.

In his work on *Municipal Corporations,* Judge Dillon summarizes the rule as follows: ·

"Municipal Corporations are liable to an action of implied assumpsit with respect to money or property received by them and applied beneficially to their authorized objects through contracts which are simply unauthorized, as distinguished from contracts which are prohibited by their charters, or some other law bearing upon them or are *malum in se,* or violative of public policy.

Chief Justice FIELD of California, later of the Supreme Court of the United States, summarized the rule in this wise:

"The doctrine of implied municipal liability applies to cases where money or property of a party is received under such circumstances that the general law, indepenedent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake or without authority of law, it is her duty to refund it, not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it or if used by her to render an equivalent to the true owner from the like general obligation; the law which always intends justice implies a promise." Argenti v. San Francisco, 16 Cal. 255.

The following cases are in point. Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. 1055, 30 L. Ed. 176; Marsh v. Fulton County, 10 Wall. (U. S.) 676, 19 L. Ed. 1040; City of Louisiana v. Wood, 102 U. S. 294, 12 Otto 294,

26 L. Ed. 153; Chapman v. County Commissioners of Douglas County, 107 U. S. 348, 17 Otto 348, 27 L. Ed. 378; Read v. Plattsmouth, 107 U. S. 568, 17 Otto 568, 27 L. Ed. 414; Pimental v. City of San Francisco, 21 Cal. 352; Clark v. Saline County, 9 Neb. 516, 4 N. W. 246; Allen v. Intendant and Councilmen of La Fayette, 89 Ala. 641, 8 So. 30, which reviews many of the cases and is a very enlightening discussion. See also McQuillin on *Municipal Corporations,* Vol. 5 (2d Ed.) par. 2092 (1945).

The facts in the case at bar are well within this rule. The declaration alleges and the demurrer admits that the appellants expended labor and material on a public road that has not been paid for though the county is in possession of and is enjoying the fruit of such expenditure. The county had plenary power to construct public roads under the general law. Sections 1588 and 1601, Revised General Statutes of 1920, Sections 2436 and 2449, Compiled General Laws of 1927.

In a note to Section 126, Dillon on *Municipal Corporations,* it is held that if money is improperly borrowed in advance of liabilities actually created and reaches the municipal treasury and is expended by direction of the governing body for authorized municipal objects, the municipality may then be liable in a proper action or suit; but the action should be, we think, for money had and received, or by suit in equity and not upon the invalid bonds. Under the practice in this State such a claim is one peculiarly of common law cognizance, being nothing more than a money demand on an implied contract for labor and material furnished. Central Florida Lumber Co. v. Taylor-Moore Syndicate, 51 Fed. (2d) 1. See also 67 Fed. (2d) 439.

The second question with which we are confronted is whether or not the claim sought to be enforced by plaintiffs in error is barred by the statute of nonclaim. Section

2941, Revised General Statutes of 1920, Section 4665, Compiled General Laws of 1927, the pertinent part of which is as follows:

"Every claim against any county shall be presented to the board of county commissioners within one year from the time said claim shall become due, and shall be barred if not so presented."

A statute of nonclaims possesses many attributes akin to statutes of limitations. It fixes the time within which claims may be presented for payment and cuts off the right to claim if not so presented. It has reference to current demands arising against the county in the usual course of business. Their purpose is to bring promptly to the attention of the county any demands against it while those who are in office and know of them are living and those whose duty it is to audit and determine their legality are present and can protect the county. Such statutes are consistent with a sound public policy when county officers are chosen for short terms and change frequently. It has no reference to claims based on bonds, contracts, or other evidences of indebtedness the amount of which was audited and determined when they were issued. Green County v. Daniel, 102 U. S. 187, 12 Otto 187, 26 L. Ed. 99; Rountree v. State, *ex rel.* Georgia Bond & Mtg. Co., 102 Fla. 246, 135 So 888; Johnson v. Wakulla County, 28 Fla. 720, 9 So. 690.

The actual claim sued on was audited and allowed by the county commissioners when the certificates on which plaintiff predicated his action were issued. The invalidity of said certificates now precludes recovery on them except on the basis of a *quantum meruit* for the actual value of the work, labor, and material rendered the county. We cannot escape the conclusion, however, that the issuance of said certificates involved an audit by the Board of County Com-

missioners of the claim on which they were predicated. Such an audit satisfied all the requirements of the statute of nonclaim.

The concluding question presented for our solution is whether or not the claim sought to be recovered is effected by Chapter 6814, Acts of 1915, Sections 1524 to 1530, Revised General Statutes of 1920, Sections 2303 to 2308, Compiled General Laws of 1927, sometimes known as the County Budget Act.

Chapter 6414, Acts of 1915, as its title and contents conclusively show, has to do with nothing more than the current fiscal policy of the county. It sets up a systematic method for handling, accounting for, and disbursing the annual receipts of the county from all sources and imposes a penalty on county officers who fail to follow its provisions. It defines the fiscal year and requires the business of the county to be conducted in an orderly manner and within its annual income.

The reasons for a budgetary policy as thus defined were approved by this Court in Keefe v. Cotton, 106 Fla. 733, 143 So. 644, the pertinent part of which is as follows:

"The budgetary fiscal policy grew out of the exigencies of government precipitated by modern economic and social conditions. Under our primitive democracy the sole function of government was police protection, but in more recent times, local, state, and national governments have assumed responsibility for educating the youth, building roads and streets, providing parks and playgrounds, offering sanitary and medical service for man and beast, warding the insane, the mute, and the blind, pensioning the aged and the infirm, offering other services to its people too numerous to relate and embarking in still other enterprises without number in the interest of the public good. It is, therefore, imperative that such a fiscal policy be adopted to restore gov-

ernmental entities to a sound financial basis, to confine expenditures within appropriations, to adequately protect every legitimate undertaking of the government to prevent the borrowing of money for current expenses except under rigid restrictions, to confine the making of long time loans to permanent improvements, to keep the public apprised of the fiscal condition of the government, to safeguard the public interest, afford data for intelligent action on financial matters, and to enthrone common honesty as a virtue admirable alike in government and citizen."

The County Budgetary Act as invoked here can have no application to indebtedness represented by bonds or certificates of indebtedness such as are brought in question when the law under which they are issued provides a complete scheme for their issue, sale, audit, and liquidation.

We have examined the declaration and our conclusion is that it was not sufficient to withstand the assault made on it by demurrer. We are not clear on whether plaintiffs are relying on an implied promise to pay the face amount of the certificates or whether they are relying on a *quantum meruit* for the value of the labor and materials furnished. The latter is the test of its sufficiency and there may be a vast difference between the two.

The judgment below is accordingly reversed without prejudice to appellant to reform or recast its pleadings so that the issues may be made up and the cause proceed to judgment consistent with the views as expressed in this opinion.

Reversed.

WHITFIELD, C. J., and BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents.

484

## On Petition for Rehearing.

Terrell, J.—On Petition for Rehearing, we have reviewed all the questions discussed by petitioner including those adjudicated in the main opinion but find no reason to recede from or modify the judgment theretofore rendered. What is said here will be in exposition and enlargement of that judgment.

We did not so state in the order granting the rehearing but the main object we had in mind was to consider the question of whether or not if a judgment should be secured against the defendant, it should be general against the county or provisional against a designated area or district and limited in payment to some particular county or district fund.

In the main opinion we held in effect that if Plaintiffs in Error stated in their declaration and proved that they in good faith made a contract with and expended their labor and material on a public project that the county was fully authorized to construct and pay for and which it is now actually in possession of and enjoying, they should be permitted to recover. This view is supported by Harwell v. Hillsborough County, 111 Fla. 361, 149 So. 547, and other cases cited in the main opinion.

It is shown that the County was authorized to make the contract and it is not shown that it was contrary to public policy, law or morals. When this is the case and the County has by performance of the contract on the part of Plaintiffs in Error, obtained their property, the law independent of statute, will require restitution or compensation. Equity in other words will restore the parties to *status quo*.

It is settled law in this country, sustained by a wealth of authority, that where a county has the power to and enters into contract for the labor or goods of another and the con-

tract is not prohibited by law or public morals, the county will not be permitted to retain the goods and deny liability on the contract even though the method of payment fails. If it attempts to avoid the contract on the ground that it is *ultra vires,* it must make restitution or render an equivalent therefor. This rule is grounded on the theory that the obligation to do justice rests on all persons whether natural or artificial. Chapmen v. Douglas County Commissioners, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; Fairbanks Morse and Co. v. City of Wagoner, 86 Fed. (2nd) 288.

Having approved this rule and being of the opinion that the case at bar falls within it, we proceed to discuss the question of whether or not any judgment secured herein should be a general one against the county or should it be provisional limited to a particular area or a definite and restricted county fund.

A majority of the Court have reached the conclusion that since Chapter 9316, Acts of 1923, under which the contract was entered into, the paving done, and the certificates executed, gave a lien against the abutting property to secure the payment of the certificates, that the said Act to all intents and purposes created a *de facto* district which, with the county, is liable on a *quantum meruit* basis for the payment of said certificates but in such proportions as the chancellor may see fit to adjudicate under the facts shown to exist and in the manner determined in Nuveen v. Board of Public Instruction of Gadsden County, decided February 16, 1937, reported in 88 Fed. Rep. (2nd) 175, and Board of Public Instruction of Polk County v. Gillespie, 81 Fed. Rep. (2nd) 586; Moor v. Spanish River Land Co., 118 Fla. 549, 159 So. 673; Burnett, *et al.,* v. Green and Meir, 105 Fla. 35, 144 So. 205.

In adjudicating the division of the burden between the county and the abutting owner, many elements are often

present, one of which is proximity to the paved highway. This undoubtedly has its advantages but it has no such significance as that fact connoted when the front foot rule for assessing the cost of paving was first approved. At that time, only property of exceptional value for business or other purposes would bear the expense of paving but with the advent of the automobile, thousands of miles of paved highways have been constructed at public expense for public convenience making the public generally much more interested than formerly. As now viewed, proximity to a paved highway may or may not enhance values.

The fact of paving main thoroughfares in rural community is primarily for the convenience of the public in traveling from point to point while enhancement in value is secondary and being so, the court should take these facts into consideration in apportioning the cost between the county and the adjacent owner. Perhaps the main consideration that should actuate the court in apportioning the cost is the extent to which the highway serves a public or a private purpose.

As to what is comprehended by the rule of *quantum meruit,* it is sufficient to say that we are not unmindful of the decisions which hold that at the common law, no statute interevening, a county cannot be required to make restitution even though it acquires the fruits of an invalid contract. Hart v. City of New York, 201 N. Y. 45, 55, 94 N. E. 219, but as already pointed out, such is not the rule in this State.

*Quantum meruit* is not a legal concept inducted from a vacuum but it arises from all the facts that compose the matrix in which it is found. When so applied, the value of the work done and materials furnished is not necessarily limited to manual labor and wood, sand, iron, and physical materials furnished but may comprehend the cost of engi-

neering, superintending, or any necessary expense that goes into and becomes a part of modern highway construction.

As heretofore stated, this opinion was cast to meet the majority view of the Court. As the writer, I do not agree to that part of the opinion apportioning the cost between the abutting owner and the county. I think the county commissioners were representing the county when the contract was made and that when Chapter 9316, Acts of 1923, was declared invalid, it vanished from the picture and such right as the Plaintiffs in Error had, grew out of equity and the law as expressed in Section 2436, *et seq.* Compiled General Laws of 1927, which treats nothing but an obligation against the county. Restoration to *status quo* on a *quantum meruit* basis implies that the county has goods of the Plaintiff in Error that it has not paid for and that it in law and morals should restore or compensate for. Such being the case, the Plaintiff is entitled to a judgment on which he can recover. It is shown that the road in question was constructed and paved through rural country. A judgment against the abutting property under the circumstances would in many instances be nothing more than a *nudum pactum.* This view is concurred in by Mr. Justice BUFORD.

It follows that our judgment of reversal must be and is hereby reaffirmed on rehearing.

ELLIS, C. J., and BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—In so far as the county is concerned, in my opinion there can be no implied liability, not only because the Board of County Commissioners were purporting to act for the petitioner, or the district to be paved, and the total cost being assessed upon the abutting lots, but because we have expressly held that any contract of this nature, involving more than $300.00, made by such a Board

without compliance with the competitive bidding statute (Sec. 2191 C. G. L.) is illegal and void, and being *prohibited* by law, no implied liability can arise from the transaction. See the recent case of Board of Public Instruction v. Cooey, 175 So. 219, and the Florida cases therein cited.