PATTON, ROBERT W., Associate Judge.
This is an appeal from a Final Judgment entered by the Civil and Criminal Court of Record of Pinellas County, Florida, on September 10, 1964 for the sum of $2,962.50 in favor of the Appellee (plaintiff below) against the Appellant. This judgment was on quantum meruit fot the value of a certain title search preparted by Appellee pursuant to an oral order of the then County Engineer of Pinellas County, Florida, under the following circumstances. On the date of said order, August ¿0, 1960, and for some *671 time both previous and subsequent thereto, the right of way for a public road in Pinel-las County, commonly known as the Bay-way, was in the process of being acquired. It appears from the record that a portion of the Bayway was to be a Primary Road and the balance was to be a Secondary Road as defined by Section 334.03 of the Florida Statutes, F.S.A., and'that the title information in question covered a section of said Bayway which was designated as a Primary road. It further appears that at the date of the aforesaid order it was contemplated that the financing of the Bayway would be accomplished through the sale of bonds, although this did not become an accomplished fact until sometime later.
The record discloses, without question, that in Pinellas County the securing of title information for acquisition of rights of way for both Primary and Secondary roads, at the time in question, was handled through the County Engineer’s Office, and that this procedure had been in use for several years. Insofar as Primary projects were concerned, the requests for title information were ordinarily made by letter from the District Office of the State Road Department to the office of the County Engineer and when such requests were received, either the County Engineer himself or some employee in his department placed an order for the title information, either verbally or 'by letter, to one of the abstract or title companies doing business in Pinellas County. Orders for title information on Secondary projects were made by the County Engineer or his employee in a similar manner. The record further shows without contradiction that the procedure for paying for title information, upon receipt of bills therefor, was for the County Engineer to forward to the State Road Department bills covering Primary projects and to present to the Board of County Commissioners of Pinellas County bills covering Secondary projects.
On August 30, 1960 there were present at a luncheon meeting two of the County Commissioners of Pinellas County, the County Attorney, the County Engineer, the president of the Appellee corporation and the member of the State Road Board from the district in which Pinellas County is included. During the course of this meeting the State Road Board official requested the County Engineer to obtain, as quickly as possible, the title information which forms the basis of this action, and to forward same to the State Road Department. Thereupon the County Engineer immediately asked the president of the Appellee if his company could furnish such title information, and upon being advised that it could, placed an order for same. The title information in question was prepared and furnished to the County Engineering Department on October 4, 1960.
According to the record, it was first learned by the County Engineer, shortly after the Appellee had delivered the title information, that an order for the same title information had previously been placed with another title company in Pinellas County. While never specifically explained in the record how this happened, it appears that some employee of the County Engineering Department, without any knowledge on the part of the County Engineer, had opened a letter from the District Office of the State Road Department which contained a request for such title information and had placed an order therefor with the other title company. It further appears that when the title information was received by the Engineering Department, pursuant to this last mentioned order, same was forwarded to the District Office of the State Road Department. The title information furnished by the Appellee was apparently never sent to the State Road Department but the record indicates that it was retained in the County Engineering Department and was used, to some degree at least, by an appraiser employed by the County to appraise land values for right of way acquisitions. It further appears that a bill for the cost of the title information sent to the State *672 Road Department was forwarded to said Department and paid.
The then County Engineer, upon discovery of the duplication of title information did not send Appellee’s bill to the State Road Department but instead presented it to the Board of County Commissioners for payment. This bill was received by said Board and submitted for pre-audit examination, at which time it was apparently discovered that the bill for the previous title report had been paid by the State Road Department. The auditor then declined to approve the bill of Appellee and sent same back to the County Commissioners. Thereafter the County Commissioners sent the bill to the State Road Department, which declined to pay it, and returned it to the County Commissioners. The Appellee, through its president, thereafter presented this bill again to the County Commissioners of Pinellas County who, in an open meeting, declined payment of same stating that the County Engineer, in placing the order with the Appellee, was acting as agent of the State Road Department and not of Pinel-las County. The then Chairman of the Board of County Commissioners indicated to the president of the Appellee that the only way said Board of County Commissioners would pay said bill would be pursuant to the judgment of a Court. Thereafter the Appellee filed suit which resulted in the judgment now being appealed.
It is quite apparent that Pinellas County had ample authority by law to secure title information on the portion of the road in question, whether it be a Primary road or a Secondary road. In addition to the basic authority vested in the County Commissioners with respect to roads under Section 125.01 of the Florida Statutes, F.S.A., the several Counties of the State have subsequently been authorized under Section 337.28 of said Statutes, to acquire rights of way for both Primary and Secondary roads. It is scarcely necessary to say that the securing of title information is essential to the acquisition of rights of way.
It is well known that in the larger Counties of this State, of which Pinellas County is one, the business of the County is handled through various departments under the supervision and authorization of the County Commissioners. It is clear from the record in this case that in Pinellas County, at all times material to this action and for at least several years prior thereto, the ordering of title information for the purpose of right of way acquisition for both Primary and Secondary Roads was done through the County Engineering Department. Appellant does not dispute this although with respect to the title information in question it denies the authority of the County Engineer to bind the County for the payment thereof.
At the time the title information in question was ordered there seems to have been some confusion as to whether the Bayway project was going to be financed by a bond issue or otherwise. There is, however, no question raised by the Appellant that the cost of acquisition of all rights of way for this project, whether Primary or Secondary, was to be paid for by funds belonging to Pinellas County, regardless of whether such funds were to be disbursed directly by the County or through the State Road Department,
It is admitted that the Appellee furnished the title information in question and the Appellant has not challenged the correctness thereof. There is also evidence that some use of this title information was made by an appraiser employed by the County. There is no doubt that the information was available for use in the acquisition of rights of way, but there is no evidence at all in the record as to what title information was actually used for this purpose. Likewise, no question has been raised by the Appellant as to the reasonableness of the amount fixed by the Trial Court for the value of the services performed by the Appellee.
*673 It is clear that title information for the project in question was secured from two different sources, hut there is no evidence whatever to indicate that the Appellee was aware of this fact until after it had fully performed said services. Furthermore, there is no evidence in this case to indicate that the County Engineer was aware of the prior order at the time he placed the order with the Appellee. Apparently the duplication of orders resulted from a lack of records or proper controls in that section of the County Engineering Department charged with the responsibility of ordering title information. In any event, there is no evidence that the Appellee was in any way responsible for such duplication or that it had notice of any facts which could have charged it with a responsibility to investigate.
Florida has, for many years, recognized the liability of a County on quantum meruit for the value of work done and materials furnished to a County which receives benefit therefrom: Harwell v. Hillsborough County, 111 Fla. 361, 149 So. 547; Moore v. Spanish River Land Co., 118 Fla. 549, 159 So. 673 and Webb v. Hillsborough County, 128 Fla. 471, 175 So. 874 and other cases therein cited. In the case of Martin County v. Hansen, 111 Fla. 40, 149 So. 616, the Supreme Court approved the recovery on quantum meruit for the services of an architect in connection with the proposed construction of a new Courthouse and Jail, although as appears from the Court’s Opinion, subsequent to the furnishing of said services, Martin County was enjoined from actually constructing said facilities because it lacked legal authority to do so.
Among the contentions made by the Appellant is that the order for the title information in question was invalid, or would have been invalid, under any circumstances, because not made by the Commissioners themselves. In other words, there seems to be some argument that the County Commissioners could not legally authorize the County Engineer to place such order. Appellant cites no specific authority in support of this contention, but we would call attention to the Opinion of the Supreme Court of Florida in the case of White v. Crandon, 116 Fla. 162, 156 So. 303, wherein a question was raised regarding the validity of the approval that the County Commissioners of Dade County made of the payment of services of an “associate attorney.” The Plaintiff in said case sought to charge the County Commissioners individually because of this action and the Supreme Court affirmed the decree of the Circuit Court dismissing the action. The opinion in this case clearly indicates that the employment of said “associate attorney” was handled by the County Attorney by the authority of the County Commissioners. No question seems to have been raised as to the manner in which said attorney was employed. As stated earlier, we are of the opinion that the evidence in this case clearly indicates that the County Commissioners of Pinellas County, at the time in question and for a number of years prior thereto, had handled the procuring of title information for road projects through its Engineering Department.
The Appellant had cited cases from other jurisdictions holding that there can be no recovery against Counties on quantum meruit, and it is recognized that there is a conflict of authority. There is an annotation on this subject in 154 A.L.R. 356. Florida, however, as above stated, for many years has recognized recovery against Counties on quantum meruit. It is to be noted that many of the cases holding that there cannot be such recovery have dealt with situations where recovery was sought under a contract expressly prohibited by law. We do not have such a situation involved in the case now under consideration. Pinellas County clearly had the authority to secure the title information in question.
This is an instance where either the Appellant or the Appellee must suffer and to inflict the loss upon the Appellee; where it was in no manner responsible for the *674 fact that a duplicate order was made, would be neither just nor equitable. The Supreme Court of the United States in the case of Marsh v. Board of Supervisors of Fulton County, 10 Wall. 676, 19 L.Ed. 1040, in considering the liability of a County, made the following statement: “The obligation to do justice rests upon all persons, natural and artificial, and if a county obtained the money or property of others without authority, the law, independent of any Statute, will compel restitution or compensation.”
No reversible error having been made to appear, the judgment appealed from is affirmed.
ALLEN, C. J., and HOBSON, J., concur.