Ronald E. Clark Attorney Board of County Commissioners Putnam County Palatka
QUESTION:
Is the Board of County Commissioners of Putnam County authorized to pay a negotiated bill presented to it for insurance premiums under a so-called retrospective premium plan, where the insurance contract was entered into by the clerk of the circuit court rather than the board of county commissioners?
SUMMARY:
The clerk of the circuit court of Putnam County possessed no statutory authority to enter into a binding contract to provide certain types of insurance coverage for Putnam County; hence, the resulting contract was invalid and unenforceable in an action on such contract as against the county. However, the county appears to have accepted and received the benefit of the insurance coverage as well as the administrative and claims management services furnished to the county by the insurance carrier over the full term of the insurance contract or policy. Therefore, since such an insurance contract is within the scope of authority of the board of county commissioners and is not prohibited by law, the county may be liable on a contract or promise implied by operation of law for the fair and reasonable value of the insurance and claims services and claims paid by the insurance carrier over the term of the insurance contract. In such circumstances, the board of county commissioners would be authorized to pay and satisfy a negotiated settlement of the claim for premiums for such insurance coverage and services.
Your letter advises that the Board of County Commissioners of Putnam County recently received a bill totaling $75,000 from an insurance carrier. After an investigation, the board determined that the bill represented payment due for insurance premiums computed under a so-called retrospective premium plan for an insurance policy issued to the county in 1973 for a 3-year term. Under a `retrospective premium plan' the insured pays fixed standard premiums during the term of the policy; however, at the end of the period, additional `retrospective' premium payments are required, the size of which are determined and controlled by the amount of losses for the period involved. See generally, Bituminous Casualty Corp. v. Lewis Crane Service, Inc.,173 So.2d 715 (3 D.C.A. Fla., 1965), and Adami v. Highlands Insurance Company, 512 S.W.2d 737, 739-740 (Tex.Ct.Civ.App. 1974), in which the characteristics of retrospective premium plans are set forth. Following negotiations, the board of county commissioners has agreed to pay approximately $50,000 of the $75,000 billed by the insurance carrier under the plan as a negotiated settlement of the claim, subject to the approval of its counsel. As the board's attorney, you request my opinion on this matter prior to advising the board.
Additional information supplied to this office revealed that the insurance policy in question constituted a `package' of workmen's compensation and automobile liability insurance for a 3-year period from 1973 to 1975, inclusive. You also stated that it had been a long-standing practice in Putnam County for the clerk of the circuit court to contract with insurance companies for the county's insurance needs. Thus, the insurance contract which is the subject of your letter was agreed upon and signed only by the clerk of the circuit court and a local authorized agent of the insurance company. However, the board of county commissioners maintains that it did not authorize the clerk to obtain the policy based on a retrospective premium plan; the commission apparently believed that the premiums would be constant and fixed over the term of the policy. Finally, it should be noted that the insurance company paid claims presented to it during the term of the policy, and that the county also paid the periodic `fixed standard' premiums during said period.
At the outset, it is necessary to determine whether or not the board of county commissioners was empowered to delegate to the clerk of the circuit court the authority to contract for insurance.
As a general rule, the governing body of a county may not delegate its powers involving the exercise of judgment and discretion. 20 C.J.S. Counties s. 89. Furthermore, the board of county commissioners must make its contracts by official action and as a board. 20 C.J.S. Counties s. 175; see also, Kirkland v. State,97 So. 502, 508 (Fla. 1923), stating that the individual members of the county commission, when not in lawful meeting, have no power as county commissioners. Thus, it is readily evident that no single officer has the power to bind the county by contract unless expressly authorized to do so by law; likewise a county officer has only such power to contract as has been conferred upon him by law. McQuillin Municipal Corporations s. 29.15. See also AGO 068-6 noting that
 [w]here the state authorizes a certain officer or legal body to contract for it in regard to certain purposes and subjects, no other officer or agency can exercise the authority to contract relating to those purposes and subjects, nor exercise authority to ratify or give effect to a contract not actually made by the authorized person or body. . . .
Also see AGO 068-44 in which the office stated that no board or officer of the state can contract for it without legislative authority and although the state may delegate the power to contract to its boards and officers, the duty of doing the essential things necessary to the creation of a contract and acts which involve discretion cannot be delegated by the authorized agency of the state to another.
Section 1(e), Art. VIII, State Const., states that, unless otherwise provided by county charter, the governing body of each county shall be a board of county commissioners. Section125.01(1), F. S., provides, in pertinent part, that `[t]he legislative and governing body of a county shall have the power to carry on county government. . . .' Pursuant to s. 125.01(3)(a), F. S., the county commission is empowered to enter into contractual obligations to carry out any of its enumerated or implied powers. Finally, under s. 125.15, F. S., the county commissioners must sue and be sued in the name of the county of which they are commissioners. Thus, it is clear that, under state law, the board of county commissioners is the agency which is authorized to act for or on behalf of the county. See State v. Kirkland, supra.
With specific regard to the types of insurance coverage contemplated by your inquiry (workmen's compensation and automobile liability), the governing statutes involved clearly authorized the board of county commissioners as the governing body of the county to contract for such insurance. As to workmen's compensation insurance, s. 440.02, F. S., defines the term `employer' for purposes of the Workmen's Compensation Act to mean,inter alia, `the state and all political subdivisions thereof, all public and quasi-public corporations therein . . . .' See
Parker v. Hill, 72 So.2d 820 (Fla. 1954), in which a county was held to be a `political subdivision' of the state for purposes of the Workmen's Compensation Act; and s. 1.01(9), F. S., defining the term `political subdivision' to include counties. Section440.03, F. S., binds every employer and employee as defined in s.440.02, F. S., to the provisions of the Workmen's Compensation Act. Accordingly, a county is required to secure coverage by workmen's compensation insurance or establish itself as a self-insurer. See s. 440.38, F. S. Thus, it is clear that a county is authorized rather than prohibited by law to contract for workmen's compensation insurance.
As to automobile liability insurance, s. 445.06(1), F. S., provides, in pertinent part, that the governing body of a county owning and operating motor vehicles upon the public highways or streets is authorized, in its discretion, to provide for the county and its agents and employees insurance covering liability for damages on account of personal injury or death or damage to the property of any person and to pay the premiums therefor from any general funds appropriated or made available for necessary and regular operating expenses of the county.
See also s. 768.28(1), F. S. (which, for counties, took effect on January 1, 1975), under which the state has waived sovereign immunity for tort liability for `itself and its agencies or subdivisions'; s. 768.28(2), F. S., defining for purposes of that act `state agencies or subdivisions' to include counties; and s.768.28(13), F. S., authorizing the state and its agencies and subdivisions to be `self-insured, to enter into risk management programs, or to purchase liability insurance for whatever coverage they may choose . . . .'
I find no provision in the above-cited statutes which authorizes any officer or agency other than the board of county commissioners to contract for the specified types of insurance coverage for the county. Specifically, I find no statute which confers such authority upon the clerk of the circuit court. Cf. s. 125.17, F. S., providing that the clerk shall be the clerk and accountant of the board of county commissioners, have custody of its seal, keep its minutes and accounts, and perform such other (similar) dutiesas its clerk as the board may direct. The powers and duties of the clerk and of the county commissioners, as county officers, must be fixed by law. Section 5(c), Art. II, State Const. Such officers possess no inherent powers and can exercise such authority only as has been expressly or by necessary implication conferred upon them by law. Hopkins v. Special Road and Bridge Dist. No. 4, 74 So. 310 (Fla. 1917); Gessner v. Del-Air Corp.,17 So.2d 522 (Fla. 1944); Edgerton v. International Company,89 So.2d 488 (Fla. 1956); State ex rel. Greenberg v. Florida Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed,300 So.2d 600 (Fla. 1974). Moreover, the authority of public officers to proceed in a particular way or only upon specified conditions implies a duty not to proceed in any manner than that which is authorized by law. White v. Crandon, 156 So. 303, 305
(Fla. 1934); see also Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944). With respect to the clerk of the circuit court, in order for his official actions to be binding, they must be in conformity with the governing statutes. Security Finance v. Gentry,109 So. 220, 222 (Fla. 1926); cf. AGO 077-76 concluding that, in the absence of statutory discretion, the clerk of the circuit court was not authorized or required by law to serve as the clerk, accountant, or secretary/treasurer for the governing body of the county hospital system or the county commissioners acting ex officio as the governing head of the county hospital system. Thus, in the absence of any authorizing statute, it is clear that the clerk of the circuit court was not authorized to enter into the insurance contract under discussion.
The remaining consideration, therefore, is whether or not, under the circumstances outlined above, the contract is binding upon the county.
Under the general rule, a contract which is beyond the scope of authority vested by law in the board of county commissioners or which is in violation of law is invalid and unenforceable. 20 C.J.S. Counties s. 193; Jones v. Pinellas County, 88 So. 389, 390
(Fla. 1921); National Bank v. Duval County, 34 So. 894, 895 (Fla. 1903); accord: Robert G. Lassiter Co. v. Taylor, 128 So. 14
(Fla. 1930) (applying rule with respect to contracts made by municipal corporations). Similarly, since county officers can exercise only such powers as are conferred on them expressly or impliedly by constitutional or statutory provision, contracts made in a county's behalf by officers or agents without lawful authority to do so are likewise invalid. 20 C.J.S. Counties s. 193; Ramsey v. City of Kissimmee, 149 So. 553, 554 (Fla. 1933) (in the absence of ratification by the city council, a contract will not be enforced where the mayor rather than the city council signed the contract, and where the city charter did not authorize the mayor to contract on behalf of the city); Fruchtl v. Foley,84 So.2d 906, 908 (Fla. 1956) (where charter required the city attorney to perform such duties `as may be required of him by ordinance or resolution of the City Board of Managers' the city attorney who received only oral instructions to represent city in land transaction did not have the power to bind the city to the resulting conveyances; hence such conveyances were void). School Board of Leon County v. Goodson, 335 So.2d 308, 310 (1 D.C.A. Fla., 1976) (school board has exclusive authority to form contracts with instructional personnel of school system; hence agreement between principal and teacher in regard to teacher's employment was not binding on county school board, absent any indication board approved agreement). Accordingly, persons dealing with an officer or agent of a governmental body are bound to ascertain the authority of such an officer in all cases where the authority is derived from law. 26 Fla. Jur. Public Works andContracts s. 8; Madison v. Newsome, 22 So. 270 (Fla. 1897); seealso Bishopric v. City of Jackson, 16 So.2d 776, 778 (Mis. 1944) (all persons dealing with a municipality or its officers are charged with knowledge of the laws governing it and limiting the powers of its officers).
Application of the foregoing principles to your inquiry leads me to conclude that since the clerk of Putnam County was not authorized by law to enter into a contract to provide the insurance coverage in question for the county, the contract which is the subject of your inquiry is invalid and unenforceable. The fact that the board of county commissioners may have verbally directed the clerk to negotiate and enter into an insurance contract is irrelevant; the clerk possesses only such authority as had been delegated to him by law or the constitution. Furthermore, the long-standing custom or practice of the clerk to enter into such contracts for the county, does not serve to enlarge the powers and authority of the clerk. See generally, 67 C.J.S.Officers s. 102, p. 366, n. 67; 25 C.J.S. Customs and Usages s. 10.
However, in your letter you suggest that the board may be estopped to deny the validity of the insurance contract. You indicate that the contract has been fully executed by the insurance company,i.e., the insurance protection has been furnished the county for the full term of the contract and the company has paid the insurance claims presented to it under the terms of the contract. It follows that the county has accepted and availed itself of the beneficial services and protection furnished by the insurance carrier. Thus, it seems evident that the insurance company has fully performed its obligations under the contract while the county has received benefits therefrom. Moreover, pursuant to s. 455.06, F. S., the county was authorized by law to contract for automobile liability insurance, and by s. 440.38, F. S., to obtain workmen's compensation insurance. Therefore, the contract under discussion is not beyond the scope of authority of the county or expressly prohibited by law. This distinction is relevant for purposes of equitable remedies such as estoppel, ratification, or implied contract or promise (quantum meruit or money had and received, unjust enrichment, or restitution). Compare Jones v. Pinellas County, 88 So. 388, 390 (Fla. 1921), in which the court (although recognizing `the propriety of the common counts in an action against the county,' id., at p. 390) stated that a county was not liable under a theory of implied contract or liability where the contract represented `a direct evasion of an express mandatory provision' of law, with Knappen v. City of Hialeah,45 So.2d 179 (Fla. 1950), in which the court recognized the rule set forth in previous cases to be as follows:
 . . . [m]unicipal corporations are liable to an action of implied assumpsit with respect to money or property received by them and applied beneficially to their authorized objects
through contracts which are simply unauthorized . . . as distinguished from those which were prohibited by their charters or some other law bearing upon them, or were malum in se, or were violative of public policy. (Emphasis supplied by the court.)
Cf. Okeechobee County, Fla. v. Nuveen, 145 F.2d 684 (5th Cir. 1944), cert. denied, 324 U.S. 881; St. Johns Electric Co. v. City of St. Augustine, 88 So. 387 (Fla. 1921); Johnson v. Town of Anthony, 156 So. 732 (Fla. 1934); Board of Public Instruction v. Billings, 15 Fla. 684, 686 (1876); Board of Public Instruction v. Connor, 4 So.2d 382, 386 (Fla. 1941); and AGO 058-282, relative to the implied liability of counties, municipalities, and other governmental agencies. See also 20 C.J.S. Counties s. 194, stating that contracts within the county's power, but irregularly made, may be validated by such county through the agents who would have been *4497 authorized in the first place to make the contract; Ramsey v. City of Kissimmee, supra, in which the court held that a contract which was within the scope of authority of a municipality but was defective in that it was entered into by the mayor rather than the council, could be later ratified by the city council.
In Pinellas County v. Guarantee Abstract and Title Co.,184 So.2d 670 (2 D.C.A. Fla., 1966), the court was faced with a fact situation analogous to that presented by your inquiry. The case involved an action against a county to recover on quantum meruit for the value of a title search prepared by the plaintiff title company. The title search had been prepared pursuant to an oral order by the county engineer in accordance with a procedure which had been used in the county for several years. However, shortly after the plaintiff delivered the title information, the county engineer discovered that an order for the same title information had previously been placed with another title company, which company had already been paid for the work. Following his discovery of the duplication, the county engineer presented plaintiff's bill to the board of county commissioners, who refused to pay the bill except upon court order. The trial court ruled that the county was liable on quantum meruit for the value of the title search.
On appeal, the judgment of the lower court was affirmed. The appellate court noted that the county commission possessed ample statutory authority to secure and contract for title information, even if the county engineer was not so authorized. In addition, the court observed that the county engineer had followed a procedure which had been in existence for many years. Moreover, the title information which was furnished was available for use in the acquisition of rights of way and for the benefit of the county. The court further explained its decision as follows:
 Florida has, for many years, recognized the liability of a County on quantum meruit for the value of work done and materials furnished to a County which receives benefit therefrom: Harwell v. Hillsborough County, 111 Fla. 361, 149 So. 547; Moore v. Spanish River Land Co., 118 Fla. 549, 159 So. 673 and Webb v. Hillsborough County, 128 Fla. 471, 175 So. 874 and other cases therein cited.
The similarity between the Pinellas County decision and the instant case is easily apparent. Although this office is not a fact-finding agency and is without authority to determine whether or not the $50,000 negotiated settlement represents the fair and reasonable value of the insurance coverage, administrative and claims management services furnished to and claims paid for and accepted by Putnam County in connection with the insurance provided thereto, it would appear that the county commission would be authorized to make such a determination and pay the claim. See
s. 125.01(1)(b), F. S., providing that the board of county commissioners is empowered to `[p]rovide for the prosecution and defense of legal causes in behalf of the county . . .'; White v. Crandon, 156 So. 303, 305 (Fla. 1934), in which the Supreme Court held that a bona fide dispute between the county commissioners and another county officer regarding the disbursement of county revenues pursuant to acts of the county officer, whose authority to act for and bind the county as purchasing agent is reasonably questionable by the county commissioners, constituted a `legal cause' which the county commissioners were entitled to prosecute or defend under statutory authority conferred upon them to represent the county in the prosecution and defense of `all legal causes'; and AGO 060-90, in which this office concluded that `[a]s the financial agent of the county having general control over its property and the management of its business, the board of county commissioners has the power to compromise and settle claims in favor of the county and claims against the county.' Cf. s. 17.041, F. S.
Prepared by: Patricia R. Gleason, Assistant Attorney General