Dear Mr. Brock:
You have asked for my opinion on substantially the following questions:
1. Does a procedure for the acquisition of professional services which is based upon an evaluation of a combination of price and qualitative considerations comply with the provisions of section 287.055, Florida Statutes?
2. Does the concept of quantum meruit authorize the Clerk of the Circuit Court to legally pay for professional services provided under contracts entered into by Collier County which may not conform to the requirements of section 287.055, Florida Statutes?
In sum:
1. Section 287.055, Florida Statutes, the "Consultants' Competitive Negotiation Act," describes a process of qualification based selection whereby professional services firms are selected in order of preference based on their ability to perform the required services. Following competitive selection, a contract is negotiated for professional services at a fair, competitive, and reasonable price. Nothing in section 287.055, Florida Statutes, authorizes an agency to include compensation rates as a factor in the initial consideration and selection of a firm to provide professional services.
2. The Collier County Commission is authorized to determine the validity of an equitable claim such as quantum meruit and the Clerk of the Circuit Court may pay such claim at the County's direction.
As the elected Clerk of the Circuit Court of Collier County, you are charged by the Florida Constitution with acting as the "ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds."[1] Section 129.09, Florida Statutes, also makes the clerk personally liable if he or she pays any claim against the county that is not authorized by law. Thus, as your letter advises, the clerk, by law, possesses certain pre-audit functions and powers requiring him or her to refuse to make expenditures or authorize disbursements of public funds that he or she believes may be illegal.
You have questioned the procedure used by Collier County in several contracts entered into for professional services. This office has no authority to review contracts entered into by the county or to comment on the terms of those contracts. Like the courts, this office must presume that official actions taken by the county are valid and enforceable until a court of competent jurisdiction determines otherwise.[2] For these reasons, my response to your request for an opinion on Collier County's compliance with the procedures of the Consultant's Competitive Negotiation Act (the CCNA) will be general in nature.
Question One
The Consultants' Competitive Negotiation Act, section 287.055, Florida Statutes, creates a qualifications based selection process for the procurement of professional architectural, engineering, landscape architectural, or land surveying services[3] by governmental agencies.[4] Pursuant to the act, an agency, including a county, must competitively select and negotiate with the most qualified firm to provide these professional services for a project.[5] The statute also provides that "[n]othing in this act shall be construed to prohibit a continuing contract between a firm and an agency."[6]
Section 287.055(3), Florida Statutes, operates to require a county subject to the CCNA to follow certain procedures for announcing occasions when professional services are required to be purchased and for certifying firms or individuals desiring to provide such services as qualified. The statute directs agencies to adopt administrative procedures for the evaluation of professional services.[7] An agency is required to publicly announce each occasion when professional services are required to be purchased for a project covered by the statute.[8]
Section 287.055(4), Florida Statutes, states that an agency must evaluate firms that offer to provide professional services for a proposed project and select no fewer than three firms that are deemed to be the most highly qualified to perform the required services.[9] The statute provides criteria for evaluating the qualifications of these firms and prohibits the consideration of compensation until after the three most qualified firms are selected:
"In determining whether a firm is qualified, the agency shall consider such factors as the ability of professional personnel; whether a firm is a certified minority business enterprise; past performance; willingness to meet time and budget requirements; location; recent, current, and projected workloads of the firms; and the volume of work previously awarded to each firm by the agency, with the object of effecting an equitable distribution of contracts among qualified firms, provided such distribution does not violate the principle of selection of the most highly qualified firms.The agency may request, accept, and consider proposals for thecompensation to be paid under the contract only during competitivenegotiations under subsection (5)."[10] (e.s.)
Following competitive selection, the act requires that the agency negotiate a contract with the most qualified firm at a compensation level determined to be fair, competitive, and reasonable. To make this determination, "the agency shall conduct a detailed analysis of the cost of the professional services required in addition to considering their scope and complexity."[11] If the agency is unable to negotiate a satisfactory contract with the most qualified firm at a price that the agency determines to be fair, competitive and reasonable, negotiations with that firm are terminated and the agency must undertake negotiations with the second most qualified firm.[12] This procedure is followed until an agreement is reached.[13]
Thus, the CCNA is a statutory procurement system that contemplates a four-step process: public announcement of the work, qualifications-based selection of the professional firm, arms-length negotiations with the most qualified firm and, ultimately, execution of a contract. As this office concluded in Attorney General Opinion 88-42, a process that establishes a fee for proposed professional services prior to the initiation of the other steps required by section 287.055, Florida Statutes, would not comply with the requirements of the act, which mandates a project-by-project selection and negotiation process.[14]
Collier County's procurement policy for professional services recognizes that
"requests exclusively for services defined under VII.B.2 [relating to those services within the scope of the CCNA] will be procured in a manner consistent with Section 287.055, F.S., known as "The Consultant's Competitive Negotiation Act" as required by said statute. Projects may include, but are not strictly limited to one or more of the following:
1. Fixed assignment contracts: A grouping of minor professional service (including construction inspection services) assignments.
2. Fixed term contracts: Countywide agreements for various and miscellaneous minor professional services (including construction inspection services) on an as needed basis.
3. General Professional Services: Includes administration, support and management of engineering, architectural, surveying and planning activities."
However, the policy goes on to authorize the county's purchasing director to qualify those requests for services by soliciting proposals on a "best value" basis involving both qualifications and price. Nothing in section 287.055, Florida Statutes, would authorize a county to adopt a procedure in conflict with the provision of the CCNA mandating a project-by-project selection and negotiation process.
In Attorney General Opinion 07-12, this office was asked whether a city project met the requirements of section 287.055, Florida Statutes, the Consultants' Competitive Negotiation Act, when a construction manager at risk or program manager at risk contract was used for the design and construction of a multi-phase project and each phase of the project was separately negotiated for a guaranteed maximum price and completion date. The opinion concluded that "separately negotiating each phase of a multi-phase project that has been awarded to a construction manager at risk or program manager at risk does not comply with the plain language or intent of section 287.055(9)(c), Florida Statutes," and that the procedures of the statute "clearly indicate that compensation will be negotiated prior to the selected firm beginning work under the contract."[15]
It appears that Collier County has attempted to adopt a procurement procedure similar to that authorized under section 287.057, Florida Statutes. That statute includes a provision for using a "best value" approach in acquiring certain commodities and services outside the scope of the CCNA. However, nothing in section 287.055, Florida Statutes, would extend the authority to negotiate price as a factor in the competitive selection and negotiation process except by using the project-by-project evaluation process mandated in section 287.055, Florida Statutes.
Finally, there is a suggestion in some of the materials forwarded to this office that continuing contracts or fixed term contracts may not be subject to the same project-by-project consideration that the CCNA otherwise requires. On the contrary, "continuing contracts" for the acquisition of professional services including those for a fixed term are specifically made subject to section 287.055, Florida Statutes, and the Legislature has directed that these contracts may only be entered into "in accordance with all the procedures of this act."[16] Thus, an agency is required to comply with the four-step process when entering into continuing or fixed term contracts: public announcement of the work, qualifications-based selection of the professional firm, arms-length negotiations with the most qualified firm and, ultimately, execution of a contract. The Legislature has specifically provided that "[f]irms providing professional services under continuing contracts shall not be required to bid against one another."[17] While this office has concluded that an agency may enter into multiple continuing contracts, compliance with the CCNA is required in each instance.[18] Thus, section 287.055(2)(g), Florida Statutes, would control any continuing contracts for professional services into which Collier County may enter and would prohibit the authority from asking firms providing professional services under continuing contracts to bid against one another.
Question Two
You ask whether you are authorized under a claim of quantummeruit to pay contractors who have provided professional services to Collier County pursuant to the policy discussed above.
While this office will not comment on contracts into which Collier County has entered, I would note that the general rule is that a contract which is beyond the scope of authority vested by law in the board of county commissioners or which is in violation of law is invalid and unenforceable.[19] Similarly, since county officers can exercise only such powers as are conferred on them expressly or impliedly by constitutional or statutory provision, contracts made on behalf of the county by officers or agents without lawful authority to do so are likewise invalid.[20]
However, you have suggested that the board of county commissioners may be estopped to deny the validity of contracts entered into under the policies of the county when these contracts have been fully executed and professional services have been provided to the county. Under these circumstances, you ask whether you, as clerk of the circuit court, are authorized to make a determination of the validity of any such claim and make payment for professional services rendered thereunder.
This office has previously stated that the clerk of the circuit court, although a constitutional officer, possesses only such powers as have been expressly or by necessary implication granted by statute.[21] Thus, the clerk's powers, like those of other constitutional county officers, are limited to those powers which have been expressly granted or are clearly necessary to give meaning and effect to those powers which have been expressly granted.[22]
In the case of Alachua County v. Powers, [23] the Clerk of the Circuit Court of Alachua County sought a declaratory judgment to clarify his fiscal duties as clerk of the county commission in four capacities: as auditor, accountant, custodian, and investor of county funds. The Florida Supreme Court stated that the trial court had correctly determined that "the Clerk was to act as county auditor in all auditing functions except when the board employs an independent auditing firm pursuant to Section 125.01(1)(x), Florida Statutes (1975)." As the Court in Alachua County v. Powers, stated:
"The clerk has the authority and responsibility to perform the auditing functions both as an arm of the board in auditing the records of constitutional officers and as a watchdog of the board in the case of pre-auditing accounts of the board in determining legality of expenditure. The phrase "legality of expenditure" includes that the funds are spent for a public purpose, that the funds are spent in conformity with county purchasing procedures or statutory bidding procedures, that the expenditure does not overspend any account or fund of the budget as finally adopted and recorded in the office of the clerk. If the board becomes concerned, it has the authority to require a performance audit or post-audit by an independent accounting firm."[24]
No statutory or constitutional authority would authorize the clerk of court to make a determination of the validity of equitable claims made under contracts entered into by Collier County.
Section 1(e), Article VIII of the Florida Constitution states that, unless otherwise provided by county charter, the governing body of each county shall be a board of county commissioners. Section 125.01(1), Florida Statutes, provides, in pertinent part, that "[t]he legislative and governing body of a county shall have the power to carry on county government. . . ." Pursuant to section 125.01(3)(a), Florida Statutes, the county commission is empowered to enter into contractual obligations to carry out any of its enumerated or implied powers. Finally, under section 125.15, Florida Statutes, the county commissioners must sue and be sued in the name of the county of which they are commissioners. Thus, it is clear that, under state law, the board of county commissioners is the agency which is authorized to act for or on behalf of the county.[25]
As a number of Florida Attorney General Opinions and Florida Supreme Court Opinions have noted:
"Florida has, for many years, recognized the liability of a County on quantum meruit for the value of work done and materials furnished to a County which receives benefit therefrom[.]"[26]
Thus, while this office is not a fact-finding agency and is without authority to determine whether or not a negotiated settlement represents the fair and reasonable value of the professional services provided to Collier County, it would appear that the county commission would be authorized to make such a determination and order payment of the claim.[27]
I am, therefore, of the opinion that the clerk of the circuit court does not have the authority to determine the validity of an equitable claim such as quantum meruit and to make payment of such a claim unless directed to do so by the board of county commissioners.
Finally, the materials you have submitted cite several cases which hold that a contract entered into in violation of statutes and rules requiring competitive bids "is absolutely void, and . . . no rights can be acquired thereunder by the contracting party."[28] In these cases, a local governmental entity contracted for goods, but did not comply with competitive bidding requirements and Florida courts refused to employ equitable remedies to compensate the contracting party. Under this analysis, a contractor may not recover even on a quantum meruit basis if the contract was let without compliance with mandatory competitive bidding requirements. While expressing no comment on how a court might view the contracts entered into by Collier County under its "procurement of professional services" procedures, I would note that the county's procedure does not completely disregard or abandon the CCNA and competitive negotiation. Rather, the county appears to have utilized additional factors in its competitive selection process that are not currently contemplated by the CCNA.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Article VIII, s. 1(d), Fla. Const.
[2] Cf. Evans v. Hillsborough County,186 So. 193, 196 (Fla. 1938); White v. Crandon,156 So. 303, 305 (Fla. 1934); State ex rel. Gillespie v.Thursby, 139 So. 372, 375 (Fla. 1932); Belk-James, Inc., v.Nuzum, 358 So. 2d 174, 177 (Fla. 1978), for the proposition that a statute is presumptively valid and must be obeyed and given effect unless and until it is judicially determined invalid.
[3] See s. 287.055(2)(a), Fla. Stat., defining "[p]rofessional services." A review of the "Procurement of Professional Services" section of the Purchasing Policy of Collier County indicates that "a professional service" for purposes of the county policy may also include such services as medical services and legal services. These services are obviously outside the scope of section 287.055, Florida Statutes.
[4] See s. 287.055(2)(b), Fla. Stat., which defines "[a]gency" as "the state, a state agency, a municipality, a political subdivision, a school district or a school board[;]" and s. 1.01(8), Fla. Stat., defining the term "political subdivision' to include counties.
[5] Section 287.055(4) and (5), Fla. Stat.
[6] Section 287.055(4)(d), Fla. Stat.
[7] See s. 287.055(2)(a) and (b), Fla. Stat., respectively defining "[p]rofessional services" and "[a]gency."
[8] Section 287.055(3), Fla. Stat.
[9] See s. 287.055(4)(c), Fla. Stat., setting forth exceptions to the application of the statute.
[10] Section 287.055(4)(b), Fla. Stat.
[11] Section 287.055(5)(a), Fla. Stat.
[12] Section 287.055(5)(b), Fla. Stat.
[13] Section 287.055(5)(c), Fla. Stat.
[14] See Alsop v. Pierce, 19 So. 2d 799, 805 (Fla. 1944) ("When the Legislature has prescribed the mode, that mode must be observed."). Cf. City of Jacksonville v. Reynolds,Smith Hills, Architects, Engineers Planners, Inc.,424 So. 2d 63 (Fla. 1st DCA 1982), in which the court recognizes that budget considerations may be a factor in selecting the covered professional services.
[15] Subsequent to issuance of this opinion, Ch. 2007-159, Laws of Fla., was enacted to define the manner in which local governments can utilize the services of construction management or program management entities.
[16] Section 287.055(2)(g), Fla. Stat.
[17] Id.
[18] See Op. Att'y Gen. Fla. 07-49 (2007).
[19] 20 C.J.S. Counties s. 193; Jones v. PinellasCounty, 88 So. 389, 390 (Fla. 1921); National Bank ofJacksonville v. Duval County, 34 So. 894, 895 (Fla. 1903);accord: Robert G. Lassiter Co. v. Taylor,128 So. 14 (Fla. 1930) (applying rule with respect to contracts made by municipal corporations).
[20] 20 C.J.S. Counties s. 193; Ramsey v. City ofKissimmee, 149 So. 553, 554 (Fla. 1933) (in the absence of ratification by the city council, a contract will not be enforced where the mayor rather than the city council signed the contract, and where the city charter did not authorize the mayor to contract on behalf of the city); Fruchtl v. Foley,84 So. 2d 906, 908 (Fla. 1956) (where charter required the city attorney to perform such duties `as may be required of him by ordinance or resolution of the City Board of Managers' the city attorney who received only oral instructions to represent city in land transaction did not have the power to bind the city to the resulting conveyances; hence, such conveyances were void).School Board of Leon County v. Goodson,335 So. 2d 308, 310 (Fla. 1st DCA 1976) (school board has exclusive authority to form contracts with instructional personnel of school system; hence, agreement between principal and teacher in regard to teacher's employment was not binding on county school board, absent any indication board approved agreement).
[21] See, e.g., Op. Att'y Gen. Fla. 78-95 (1978), concluding that, in the absence of any authorizing statute, the clerk of the circuit court was not authorized to enter into a contract for insurance as specified therein, and Ops. Att'y Gen. Fla. 77-76 (1977) and 79-70 (1979); cf. Op. Att'y Gen. Fla. 80-59 (1980). And see Security FinanceCo. v. Gentry, 109 So. 220, 222 (Fla. 1926), in which the Florida Supreme Court stated that "[t]he clerk's authority is entirely statutory, and his official action, to be binding upon others, must be in conformity with the statutes." Cf. Pan American WorldAirways v. Gregory, 96 So. 2d 669, 671 (Fla. 3d DCA 1957), stating that "[t]he clerk is an officer of the court whose duties are ministerial and as such he does not exercise any discretion."
[22] See Overholser v. Overstreet,383 So. 2d 953 (Fla. 3d DCA 1980) (clerk's authority is entirely statutory, and his official action to be binding upon others, must be in conformity with such statutes); Ferlita v. State,380 So. 2d 1118 (Fla. 2d DCA 1980) (clerk of court's power to act must clearly appear from particular statute). Gessner v. Del-AirCorporation, 17 So. 2d 522 (Fla. 1944); and 67 C.J.S. Officers s. 190(a). See also Ops. Att'y Gen. Fla. 86-94 (1986), 78-95 (1978) and 75-161 (1975).
[23] Alachua County v. Powers,351 So. 2d 32 (Fla. 1977).
[24] Supra at 37.
[25] See Kirkland v. State, 97 So. 502 (Fla. 1923).
[26] Pinellas County v. Guarantee Abstract Title Co.,184 So. 2d 670 (Fla. 2d DCA 1966), citing Harwell v. HillsboroughCounty, 149 So. 547 (Fla. 1935); Moore v. Spanish River LandCo., 159 So. 673 (Fla. 1935); and Webb v. HillsboroughCounty, 175 So. 874 (Fla. 1937).
[27] See s. 125.01(1)(b), Fla. Stat., providing that the board of county commissioners is empowered to "[p]rovide for the prosecution and defense of legal causes in behalf of the county . . .;" White v. Crandon, 156 So. 303, 305 (Fla. 1934), in which the Supreme Court held that a bona fide dispute between the county commissioners and another county officer regarding the disbursement of county revenues pursuant to acts of the county officer, whose authority to act for and bind the county as purchasing agent is reasonably questionable by the county commissioners, constituted a "legal cause" which the county commissioners were entitled to prosecute or defend under statutory authority conferred upon them to represent the county in the prosecution and defense of "all legal causes"; and Op. Att'y Gen. Fla. 60-90 (1960), in which this office concluded that "[a]s the financial agent of the county having general control over its property and the management of its business, the board of county commissioners has the power to compromise and settle claims in favor of the county and claims against the county."
[28] Harris v. School Board of Duval County,921 So. 2d 725 (Fla. 1st DCA 2006); Armco Drainage MetalProducts, Inc. v. County of Pinellas,137 So. 2d 234 (Fla. 2d DCA 1962).