GEORGE WHITE v. C. H. CRANDON, *et al.*

156 So. 303.

Opinion Filed August 10, 1934.

164

Richard H. Hunt, for Appellant;.

Hudson & Cason, for Appellees.

PER CURIAM.—This was a suit in equity wherein George White, as complainant, sued the individual members of the Board of County Commissioners of Dade County, Florida, to the end that the court might decree that the defendants individually account for and pay to the defendant, Dade County, Florida, of which they were the County Commissioners, the sum of $1,000.00 for the use and benefit of the road fund of said county. The case was referred to a Master for the taking of testimony and the submission of findings of law and fact upon the issues presented by the bill of complaint and the answers of the defendants. The Master reported findings in favor of the defendants, which findings were approved by the final decree of the Court from which this appeal is prosecuted.

It was admitted by the defendants that, acting as County Commissioners of Dade County, at an official meeting of the Board of County Commissioners, held at the Court House in Miami, they had approved a certain bill submitted to them in the sum of $1,000.00 as payment for "services of Associate Attorney" and thereupon issued a warrant

against the Road Fund of said County in the sum of $1,000.00, payable to the order of Hudson & Cason, the regularly retained attorneys for the Board of County Commissioners; that said warrant was afterwards delivered by Hudson & Cason, the regularly retained County Attorneys, to one James M. Carson, of Miami, Florida, another attorney, to whom said warrant was endorsed by Hudson & Cason at the direction of the Board of County Commissioners; that said warrant had been paid and that the payment of the warrant had been charged against the Road Fund of Dade County, Florida, pursuant to the warrant. The County Commissioners, however, contended that although they have had paid the said sum of $1,000.00 to the said James M. Carson for legal services to be rendered by said Carson, that such payment was for the purpose of compensating the said Carson for services to be rendered by him in securing the legal adjudication of a controversy then pending between the Board of County Commissioners and the Purchasing Agent of Dade County, including legal services to be rendered in connection with the prosecution in the Supreme Court of Florida of an action of quo warranto against the Purchasing Agent to test his power to act in the premises in contravention of certain authority claimed by the County Commissioners to be in conflict therewith.

It was denied by the defendants that the employment of Carson for the purpose and reason aforesaid was unlawful or that it constituted a misappropriation of the public funds of said County. On the contrary, the County Commissioners contended that the employment of Carson as Associate Counsel to assist their regular counsel, Hudson & Cason, with regard to the subject matter was in all respects for a lawful and proper purpose, was done in good faith and that

the services so hired on the part of Carson had been faithfully and properly rendered.

The controversy which formed the basis of the present proceeding was that reported under the title of State ex rel. Landis, Atty. Gen. v. Wheat, 103 Fla. 1, 137 Sou. Rep. 277, wherein this Court dealt with and construed the duties and powers of the Board of County Commissioners of Dade County, Florida, as affected by Chapter 10501, Special Acts of 1925, and Chapter 15159, Special Acts of 1931, Laws of Florida.

While in appropriate cases, where the circumstances may justify it, a member of a Board of County Commissioners will be held personally liable for money voted and paid out without authority of the law where the act in question is equivalent to a misappropriation of public funds so paid out, a majority of the Court are of the opinion that no personal liability is incurred by a member of a Board of County Commissioners having the power of disbursement of public funds in the administration of the Board's affairs, where there is such a conflict of authority between the Board of County Commissioners, acting under the general laws of the State, and a special county statutory officer purporting to act under a special law of the State, that it is reasonably necessary for the Board of County Commissioners to seek an adjudication of the rights and powers of the Board of County Commissioners as opposed to the rights and powers of the special statutory officer, in order to enable the County Commissioners to properly perform the duties devolving upon them as regularly elected County Commissioners of the County.

It is true that the County Commissioners of each county are constitutional officers whose duties and powers are prescribed by statute, and that where there is doubt as to the

existence of authority, it should not be assumed. Hopkins v. Special Road & Bridge Dist. No. 4, in Brevard County, 73 Fla. 247, 74 Sou. Rep. 310. It is likewise true that laws found upon the statute books are presumably valid and it is the duty of a Board of County Commissioners to obey the statutes until in proper proceedings they are passed upon by the courts and declared invalid or inoperative. State *ex rel* Gillespie v. Thursby, 104 Fla. 103, 139 Sou. Rep. 372. It is further true that a ministerial or executive officer of the government has no authority or right to decline the performance of purely ministerial duties which are imposed upon him by statute solely on the ground that such officer believes that the statute violates or contravenes the constitution, because all statutes are presumed to be and must be treated and acted upon by ministerial officers as constitutional and legal until their unconstitutionality or illegality has been judicially established.

But where apparent conflicts or contradictions are observed between the provisions of the general law affecting the duties of County Commissioners, and the provisions of a special Act relating to the duties of a special statutory county officer, to such an extent that personal obligations or liabilities upon the part of the County Commissioners may be incurred in their handling of the county finances and the disbursement of the county revenues, depending upon whether or not the special or local law has been properly enacted by the Legislature so as to become a law at all or not, such County Commissioners may lawfully make an expenditure of public moneys to defray the expenses and compensation of an attorney employed by them to seek an appropriate adjudication in the courts for the determination of the constitutional existence *vel non* of the local law, and an adjudication of the rights and liabilities of the Board of

County Commissioners with respect to the observance of the general law as modified or affected by the special law, in the event that such special law is found to have been constitutionally passed.

In the present case, it appears that the Board of County Commissioners of Dade County, through their regularly employed County Attorneys, Hudson & Cason, engaged the services of another attorney, James M. Carson, in good faith and for a fair price, this was for the purpose of having adjudicated in any appropriate way that said engaged counsel might see fit to pursue, to have settled the controversy then pending between said County Commissioners, as general county officers, and one Clarence L. Wheat, as County Purchasing Agent, acting under a special and local law, whose constitutional existence at that time, as well as general scope and validity, had been brought in question. A majority of the Court are of the opinion that such an employment is not subject to the complaint that it constitutes a misappropriation of county funds, and that it is within the scope of the powers given by Section 2153 C. G. L., 1475 R. G. S., to County Commissioners to represent the county in the prosecution and defense of "all legal causes."

A dispute which has *bona fide* arisen between the County Commissioners and another county officer regarding the disbursement of county revenues pursuant to the acts of the county officer, whose authority to act for and bind the county as Purchasing Agent is reasonably questionable by the County Commissioners, constitutes a "legal cause" which the County Commissioners are entitled to prosecute or defend under the authority conferred upon them by Section 2153, C. G. L. *supra*.

The authority of public officers to proceed in a particular

way or only upon specific conditions, implies a duty not to proceed in any manner than that which is authorized by law. First Natl. Bank of Key West v. Filer, 107 Fla. 526, 145 Sou. Rep. 204. The duty of County Commissioners to comply with the indispensable legal formality of seeing to it that every warrant issued by the County Commissioners for the payment of a county claim is a proper legal charge against the county, entitles the Board of County Commissioners to seek an adjudication of the nature and extent of any obligation sought to be imposed upon them by statute to make a disbursement of county funds, where the constitutional enactment of the statute is reasonably in controversy or as to the scope and extent of the duty imposed is ambiguous and doubtful.

If the bill for legal services as paid to Mr. Carson was a proper charge against the county under the circumstances of this case, the fact that it was erroneously disbursed from the Road Fund instead of the proper county fund, is immaterial on the issue raised by the bill of complaint in the present suit. This is an effort to have this item charged to the County Commissioners personally as a misappropriation of moneys rather than attempt to have allocated the disbursement to the proper county fund.

A majority of the court are of the opinion that the decree dismissing the bill of complaint is not erroneous and the same should be affirmed, and it is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting)—George White, a citizen and taxpayer of Dade County, Florida, exhibited his bill in the Circuit Court for that county against C. H. Crandon, F. G. Railey, R. P. Barfield, Cecil Turner and J. D. Redd and

Dade County. The above named individual defendants are County Commissioners for Dade County.

The purpose of the bill was to require the individual defendants to restore to Dade County for the benefit of the road fund of that county the sum of one thousand dollars, which they, as County Commissioners, had caused to be withdrawn from that fund, as it is alleged, for the illegal and unauthorized purpose of paying for the services of an attorney at law specially engaged for the purpose of prosecuting an action in the Supreme Court of Florida in quo warranto to enquire into what right C. L. Wheat exercised the liberties, privileges and authority of a public officer as auditor and purchasing agent for Dade County, Florida.

The lawyers composing the law firm of Hudson & Cason are employed by the County Commissioners on an annual retainer basis. The attorney, Mr. J. M. Carson, who was specially engaged for the particular service is not a member of that law firm. He was engaged for the special service as "Associate Attorney" under a resolution adopted by the Board of County Commissioners on August 4, 1931. The resolution is in the following words as set out in the amended bill of complaint.

"Commission Meeting of August 4, 1931.

"It was moved by Commissioner F. G. Railey that the county attorneys be authorized to employ additional counsel whenever in their opinion it becomes necessary, subject, however, to the approval of the Finance Committee, and that the Finance Committee be given authority by the Board to reject or approve request of the attorneys for the employment of additional counsel.

"The motion was seconded by Commissioner R. P. Barfield and was upon vote duly carried."

The resolution authorized the county attorneys to em-

ploy additional counsel whenever in their opinion it became necessary subject to the approval of the Finance Committee, which was given the power to reject or approve a request of the attorneys for the employment of additional counsel.

. Neither the answer interposed by the individual defendants nor the evidence in the case tend to show that the procedure outlined by the resolution in securing the services of "Additional Counsel" was meticulously followed, but on the contrary the answer avers that the negotiations with Mr. Carson for his services were conducted by the Finance Committee for the convenience of the Board of County Commissioners, and that the acts of the committee in that regard were reported to the Board of County Commissioners and by it approved by the payment of Carson's bill for one thousand dollars. The payment was made to Mr. Carson before he entered upon the performance of his services and before he accepted the employment.

. The answer therefor avers that the "Associate Attorney" was employed by the Board of County Commissioners and not by the Finance Committee alone.

. The condition, which gave rise to the employment of special, associate or additional counsel, grew out of the state of doubt in the minds of the members of the Board of County Commissioners as to the performance of their duties in view of the enactment by the Legislature of 1931 a special Act known as Chapter 15149, amending certain sections of Chapter 10501, Acts of 1925, creating the office of Auditor and Purchasing Agent for Dade County, Florida, and prescribing his duties and fixing his salary.

. The averred indecision, irresolution, uncertainty, on the part of the commissioners was augmented by the terms of the general law as they interpreted it affecting their duties

and the advice of "their counsel that one or both of the said local laws was probably unconstitutional," and being unable to resolve the doubts and difficulties confronting them even with the advice of counsel, they decided to question the validity of an Act of the Legislature, which created the office of Auditor and Purchasing Agent of the county, prescribing his duties and requiring the payment of his salary of forty-eight hundred dollars per annum by the County Commissioners out of the general funds of Dade County.

The County Commissioners purposed to question the validity of those special acts by a proceeding in quo warranto against the purchasing agent who held his position by virtue of an election, qualification and commission under Chapter 16501, Special Acts of 1925, as amended by Chapter 15149, Acts 1931, *supra*.

The history of that case and the decision of the court holding the acts to be valid and dismissing the writ of quo warranto is reported under the title of State, *ex rel.* Landis, v. Wheat in 103 Fla. 1, 137 South. Rep. 277.

The instant case came on to be heard upon the amended bill of complaint, answers of the defendants, the special master's report of the testimony and his findings thereon, and the complainant's exceptions to the report. The Chancellor overruled the exceptions to the master's report, ratified, approved and confirmed it, and dismissed the cause. From that decree the complainant White appealed.

It is settled law in this State to the present time that County Commissioners have only such powers and authority as are conferred upon them by acts of the Legislature. See Bowden v. Ricker, 70 Fla. 154, 69 South. Rep. 694; Stephens v. Futch, 73 Fla. 708, 74 South. Rep. 805; Hopkins v. Special Road & Bridge Dist. No. 4, Brevard County, 73 Fla. 247, 74 South. Rep. 310; Parker v. Evening News

Pub. Co., 54 Fla. 544, 45 South. Rep. 309; State v. Walton Co., 93 Fla. 796, 112 South. Rep. 630.

The County Commissioners of each county are constitutional officers whose duties and powers are prescribed by statute and where there is doubt as to the existence of authority it should not be assumed. Hopkins v. Special Road & Bridge Dist. No. 4, Brevard County, *supra*.

The laws found upon the statute books are presumably valid and it is the duty of officers to obey the statutes until in proper proceedings they are passed upon by the courts and declared invalid or inoperative. See State *ex rel.* Gillespie v. Thursby, 104 Fla. 103, 139 South. Rep. 372.

In the last cited case this Court, speaking through Mr. Commissioner Davis, said: "The Volusia County officials were not responsible for the conditions that arose by reason of the passage of House Bill No. 1306, nor were they guilty of any illegal act. It was not up to them to disregard the provisions of House Bill No. 1306, Acts 1931, c. 14776. Indeed, it was their duty to obey the statute until in proper proceedings those provisions of the statute relating to their duties were passed upon by the courts, for they were presumptively valid."

Nor has a ministerial or executive officer of the government any authority to decline the performance of purely ministerial duties which are imposed upon him by a law on the ground that it violates or contravenes the Constitution. The laws are presumed to be and must be treated and acted upon by subordinate executive functionaries as constitutional and legal until their unconstitutionality or illegality has been judicially established, for in a well regulated government obedience to the laws by executive officers is absolutely essential and of paramount importance. Were it not so, the most inextricable confusion would inevitably re-

sult and produce such collisions in the administration of public affairs as to materially impede the proper and necessary operations of government. It was surely never intended that an executory functionary should nullify a law by neglecting or refusing to execute it.

The above language was quoted approvingly by this Court from State *ex rel.* New Orleans Canal & Banking Co. v. State Auditor, 47 La. Ann. 1679, 18 South. Rep. 746, 47 L. R. A. 512, in the case of State v. State Board of Equalizers, 84 Fla. 592, 94 Sou. Rep. 681, in which case this Court expressly decided to follow the doctrine that the power to declare an Act unconstitutional is purely a judicial power and cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution. See also State v. Beville, 107 Fla. 57, 144 South. Rep. 331; State v. Jordan, 105 Fla. 322, 140 South. Rep. 908; Smith v. Indiana, 191 U. S. 138, 24 Sup. Ct. Rep. 51, 48 L. Ed. 125.

The observance of the requirements of the Statute involved the County Commissioners in no persnal obligation. The long list of apparent conflicts or contradictions between the provisions of the general law affecting the duties of County Commissioners and the provisions of the special Acts relating to the duties of the purchasing agent show no personal obligation or liability upon the County Commissioners, no interest jeopardized nor trust violated by observing the provisions of the special Acts in so far as they affected the duties of the County Commissioners.

So they seek to justify the expenditure of public funds, raised of course by a tax on the people, in order that they may be advised by a court decision whether they should observe the requirements of the statute. To that end they attacked the authority of the person occupying the position

of purchasing agent by assailing the constitutionality of the Act of the Legislature under the provisions of which he held his commission of office.

The expenditure of public moneys by an executive officer having in his power the disbursement of public funds in the administration of governmental affairs develops no personal liability upon him so long as he observes the requirements of the statute directing such expenditures. Public funds created for the discharge of public obligations and the administration of public functions are raised by the State's power of taxation, therefore all money drawn from the public treasury by persons whose duty it is to expend it must be supplied by taxation. It is not conceivable that the Legislature would, or that it has authorized County Commissioners, whose only powers are conferred by statute, to levy and collect taxes for the purpose of litigation to test the power of the Legislature to direct how the funds shall be expended and for what purpose.

Even granting that the power might exist to refuse to comply with the provisions of the Act and thus force others who may be interested to compel by mandamus the performance of duties required by the statute, and that in such proceedings the recalcitrant officers would be heard to question the constitutionality of the Act imposing the duties which they refuse to perform, no power exists either by express provision or necessary implication authorizing ministerial officers to expend the public funds for expenses of counsel or court costs in initiating proceedings in the courts to attack the validity of statutes imposing those duties because some members of the Board or officers were not learned in the law and held doubts as to the validity of the statute, or were uncertain as to their duties under its provisions.

The law confers no such poyer on the Board of County

Commissioners. Therefore, the expenditure of the money was without authority of law and was equivalent to a misappropriation of public funds.

The money thus voted and paid out in the circumstances set forth in the pleadings and the evidence was equivalent to the conversion of trust funds for which each one of them responsible for such action is liable, and he may at the suit of a citizen and taxpayer be required to restore the money unlawfully spent. See Osburn v. Stone, 170 Cal. 480, 150 Pac. Rep. 367; Mines v. DeLaValle, 201 Cal. 273, 257 Pac. Rep. 530; Neacy v. Drew, 176 Wis. 348, 187 N. W. Rep. 218; Burns v. Essling, 163 Minn. 57, 203 N. W. Rep. 605; Richter v. Mayor & Alderman of Savannah, 160 Ga. 178, 127 S. E. Rep. 739; Brown v. Walker, 188 N. C. 52, 123 S. E. Rep. 633; 19 R. C. L. p. 1167, Sec. 441.