QUESTIONS: 1. May the Department of Transportation, as a provision of the bid specifications for construction contractors open to all prequalified bidders, include a provision that the successful contractor must award a specified percentage of any subcontracts which the contractor issues to minority business enterprises? 2. May the department, under s. 337.13, F. S., adopt regulations which would limit prequalification for a certain portion of its contracts to minority business enterprises as defined in Paragraph 3b of Volume 6, Chapter 4, Section 1, Subsection 8, of the Federal-Aid Highway Program Manual?
SUMMARY: Although the Department of Transportation may not require a successful contractor to absolutely guarantee a specified percentage of any subcontracts to minority business enterprises, it has wide latitude in setting goals and imposing sanction to insure that "each bidder intending to sublet part of the contract work shall make contact with potential minority business enterprise subcontractors to affirmatively solicit their interest, capability and prices." The department is not authorized under s. 337.13, F. S., to adopt regulations which would limit prequalification for a certain portion of its contracts to minority business enterprises. However, the department may consider the fact that one of the bidders is a minority business enterprise in awarding the contract to the "lowest responsible bidder." The Division of Road Operations is authorized by s.339.05, F. S., "to make all contracts and do all things necessary to cooperate with the United States Government in the construction of roads under the provisions of said Acts of Congress [Federal Aid Law] and all amendments thereto." Pursuant to s. 337.13, F. S., the Department of Transportation is required to adopt regulations "for the qualification of competent and responsible bidders. Such regulations shall include requirements with respect to equipment, past record, experience of applicant, and personnel of organization." Volume 6, Chapter 4, Section 1, Subsection 8, of the U.S. Department of Transportation, Federal Highway Administration, Federal-Aid Highway Program Manual in Transmittal 164, dated November 3, 1975, provides, in part, that it is the policy of the Federal Highway Administration, based on Executive Order 11625, dated October 13, 1971, "to promote increased participation of minority business enterprises in Federal-aid highway construction programs." Paragraph 8c of Subsection 8 provides that "[t]he State highway agencies shall take affirmative action to increase the participation of minority business firms in Federal-aid highway construction." The affirmative action is required to include various provisions to assure adequate identification of minority business enterprises by the contractors and requirements that "each bidder intending to sublet part of the contract work shall make contact with potential minority business enterprise subcontractors to affirmatively solicit their interest, capability and prices, and shall document the results of such contacts." Paragraph d encourages the state highway agencies to establish "innovative programs for assisting minority and small business firms to become prequalified, licensed or otherwise eligible to bid on State highway agency work." The goals as set forth in the manual are to prequalify or license an additional 500 minority businesses nationwide as potential contractors by July 1978 (the goal for Florida is 20) and to have each state formulate its own dollar goal based upon criteria set forth therein. It is important to note that they are goals and not absolute and rigid requirements. AS TO QUESTION 1: As I read this question, you ask if the department may require a successful contractor to absolutely guarantee a specified percentage of subcontracts to minority business enterprises, and interpreting your question thusly, it is answered in the negative. In so ruling, a distinction must be made between an absolute guarantee (regardless of qualification and without consideration for availability) and a goal which is set which requires the contractor to make every good faith effort to meet that goal. This opinion will not discuss affirmative action programs in general, as it seems well understood that our society cannot be completely colorblind in the short term if we are to have a colorblind society in the long term. Associated Contractors of Massachusetts, Inc. v. Altshuler,490 F.2d 9 (1st Cir. 1973), cert. denied, 416 U.S. 312 (1974). Preferential treatment is one partial prescription to remedy our society's most intransigent and deeply rooted inequalities. My research has disclosed no decisional law regarding the requirement that a contractor subcontract a certain percentage of any subcontracts to minority business enterprises; however, sufficiently analogous are the decisions requiring a successful bidder to take affirmative steps to hire minorities. In Weiner v. Cuyahoga Community College District, 19 Ohio St.2d 35,249 N.E.2d 907 (1969), cert. denied, 396 U.S. 1004 (1970), the court stated that the establishment of a quota system of employment directed at securing either an absolute guarantee of the actual results or a result pertaining only to a particular minority would be discriminatory in violation of the Civil Rights Act of 1964. The court upheld the affirmative action plan which was intended to "have the result of assuring that there is minority group representation in all trades on the job and in all phases of the work," noting that what was being sought was an unequivocal statement by the contractor which would assure equal employment opportunity. The affirmative action plan which was the basis of the action in Contractors Association of Eastern Pennsylvania v. Secretary of Labor, 442 F.2d 159 (3d Cir.), cert. denied,404 U.S. 854 (1971), was similar to that in Weiner, supra. The plan required that a contractor set specific goals for minority group hiring within certain skilled trades and that he make "every good faith effort" to meet those goals. The court upheld the validity of the plan against attacks based upon the Civil Rights Act of 1964 and the due process clause of the U.S. Constitution stating that the plan was a valid action "to remedy the perceived evil that minority tradesmen have not been included in the labor pool available for the performance of construction projects in which the federal government has a cost and performance interest." The court in Associated General Contractors of Massachusetts, Inc. v. Altshuler, supra, was asked to sanction a plan for hiring a specific percentage of minority workers that requires an employer to take "every possible measure" to reach the goal and places upon him the burden of proving compliance, under threat of serious penalties if that burden is not sustained. The court noted: It is but a short step from these requirements to demand that an employer give an absolute percentage preference to members of a racial minority, regardless of their qualifications and without consideration for their availability within the general population. It stated that an affirmative action plan might be considered to impose unrealistic and unreasonable goals if it included a racial preference that could not be fulfilled, or that could be fulfilled only by taking unqualified workers. Thus, it becomes important that affirmative action plans contain fair procedures for contractors to make a showing that insufficient qualified workers are available. From the above-cited, and numerous other uncited, cases, it can be seen that a contractor for public works may be required to take affirmative steps to employ racial minorities. The courts seem to have allowed the states wide latitude in establishing and carrying out such plans, subject to the limitation that sanctions cannot be imposed if the contractor in good faith strives to meet the goals and falls short. See Joyce v. McCrane, 320 F. Supp. 1284 (D.N.J. 1970). It is recognized that affirmative action may be expensive. The level of such action required on any given project is a factor which will almost surely affect the amounts of the individual bids and often will determine whether a contractor will be able to bid at all. As can be gleaned from the above discussion, although the department may not require a successful contractor to absolutely guarantee a specified percentage of any subcontracts to minority business enterprises, it has wide latitude in setting goals and imposing sanctions in order to insure that "each bidder intending to sublet part of the contract work shall make contact with potential minority business enterprise subcontractors to affirmatively solicit their interest, capability and prices." AS TO QUESTION 2: Your second question is answered in the negative. As stated previously, s. 337.13, F. S., requires the Department of Transportation to adopt regulations for the qualification of competent and responsible bidders. If an applicant for qualification is found to possess the qualifications prescribed by law, then a certificate of qualification is issued. Such certificate shall authorize the holder to bid on all work on which bids are taken by the department for which the certificate indicates he is qualified. Section 337.14, F. S. I can find no authority for the department to modify the effect of this provision. The department may exercise only those powers granted by statutes or the Constitution, either expressly or by necessary implication. If reasonable doubt exists as to whether the department possesses a specific power, doubt must be resolved against the department. Florida State University v. Jenkins,323 So.2d 597 (1 D.C.A. Fla., 1975); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dism'd, 300 So.2d 900 (Fla. 1974); White v. Crandon,156 So. 303 (Fla. 1934); First National Bank of Key West v. Filer,145 So. 204 (Fla. 1933), 87 A.L.R. 267 (1933).
Pursuant to s. 337.11, F. S., the department may use its discretion and either award the proposed work to the "lowest responsible bidder," reject all bids and readvertise, or perform the work with convict or free labor. In determining the "lowest responsible bidder," the department is vested with discretion to determine who are and who are not responsible bidders. In exercising this discretion, the department is vested with the power, authority, and duty to consider more than just the dollar and cents figure of the bid. Willis v. Hathaway, 177 So. 89 (Fla. 1928). Against attacks of violation of the principles of competitive bidding and the equal protection clause, the court in Dalton v. Kunde, 31 Ohio Misc. 75, 286 N.E.2d 483 (1972), upheld a city ordinance requiring city officials to determine the lowest and best bid for municipal contracts by giving consideration to minority group representation in the bidder's operation as a valid exercise of the police power and being consistent with the city's affirmative obligation of assuring equal protection, including nondiscrimination, to all its citizens. The court stated that "the Constitution requires that government shall affirmatively seek and find effective programs to combat segregation and discrimination, at least where government funds or influence is involved." Thus, although the department is not authorized by s. 337.13, F. S., to adopt regulations which would limit prequalification for a certain portion of its contracts to minority business enterprises, the department may consider the fact that one of the bidders is a minority business enterprise in awarding the contract to the "lowest responsible bidder."