Ellen Mills Gibbs Attorney for North Broward Hospital District Fort Lauderdale
Question:
May the malpractice self-insurance trust funds of the North Broward Hospital District, a special tax district created by special law, be invested by the trustee, a national banking organization, directly into United States Treasury bills, bonds, and notes?
SUMMARY:
Although under the provisions of s. 218.345(1)(b), F. S., the board of commissioners as the governing body of the hospital district has the authority to invest district `surplus funds' as defined in s. 218.345(4) in negotiable direct obligations of the United States Government, in the absence of any provision in the district's enabling legislation, as amended, or in general law authorizing the district's governing board to delegate its investment authority and until judicially or legislatively determined to the contrary, the governing board of the hospital district may not delegate its authority to invest district funds to the trustee of a self-insurance trust fund established by the district.
The North Broward Hospital District was created in 1951 by special law as a special tax district to establish, and maintain hospitals `for the preservation of the public health and for the public good and for use of the public of said District.' See ch. 27438, 1951, Laws of Florida, as amended by chs. 61-1931, 61-1937, 63-1192, 65-1316, 65-1319, 67-1170, 67-1171, 69-895, 69-898, 69-914, 71-578, 73-411, 73-412, 73-413, 74-449, 75-347, 75-348, 76-338, 77-508, and 78-481, Laws of Florida. You state in the memorandum attached to your letter of inquiry that the district has established a self-insurance trust fund in order to provide an economical form of malpractice and comprehensive patient liability insurance. To set up this self-insurance trust fund, the district has transferred funds to a trustee, a national banking organization doing business in Broward County. At present the fund's investments are limited to savings accounts and certificates of deposit which are insured by the government or protected by an appropriate pledge of United States Treasury issues or first mortgages. See ss. 659.24 and 665.321, F. S., and AGO 077-80 in which this office stated that the North Broward Hospital District falls within the purview of ss. 665.231 and 665.321, F. S., and, pursuant to the authorization contained therein, may invest district funds in certificates of deposit of state and federal savings and loan associations without limitation as to the amount thereof and without conditions thereon so long as such associations deposit and pledge sufficient securities with the Department of Banking and Finance to secure and safeguard such investments of the district in the same manner as is required with respect to the deposit of such funds in banks.
You indicate that the hospital district is interested in broadening its investments to include the purchase of United States Treasury bills, bonds, and notes, and you question whether district funds may be invested in this manner. This opinion is thus expressly limited to a consideration of the hospital district's authority to invest its funds directly in negotiable direct obligations of, or obligations guaranteed by, the United States Government. No opinion is expressed herein concerning the validity of the established self-insurance trust fund or of the bank as trustee thereof. You have not advised this office as to whether the hospital district established the trust fund under the provisions of ss. 768.54 and 627.357, F. S., and therefore it is assumed for the purposes of this inquiry that such trust fund was not established pursuant to these statutes.
Under the provisions of a special act establishing the hospital district, the board of commissioners, as the governing body of the district, is vested with all the powers of a body corporate. The district's enabling legislation, however, is silent as to the investment of district funds, neither expressly authorizing nor prohibiting the type of investments contemplated in your letter of inquiry. It is well settled within this state that special districts possess only such powers as are expressly or by necessary implication authorized or granted by statute. Seegenerally White v. Crandon, 156 So. 303 (Fla. 1934); Harvey v. Board of Public Instruction, 133 So. 869 (Fla. 1931); and Hopkins v. Special Road and Tax District No. 4, 74 So. 310 (Fla. 1917). Cf. Molwin Investment Company v. Turner, 167 So. 33 (Fla. 1936) (express power duly conferred may include implied authority to use means necessary to make express power effective but may not warrant the exercise of a substantive power not conferred). Seealso Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346, 350 (Fla. 1919), in which the Florida Supreme Court noted that the Everglades Drainage District, a special taxing district created with all the powers of a body corporate, was a public quasi-corporation and, as such, `a governmental agency of the state for certain definite purposes, having such authority only as is delegated to it by law.' Moreover, if there is any doubt as to the lawful existence of a particular power that is being exercised, the further exercise of the power should be arrested. See State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974), and Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944).
Section 218.345(1)(b), F. S., provides limited statutory authority for a special district to invest its surplus funds in negotiable obligations of the United States Government by stating in pertinent part that the governing body of each special district `shall, by resolution . . . invest and reinvest any surplus funds
in its control or possession in . . . [n]egotiable directobligations of, or obligations the principal and interest of which are unconditionally guaranteed by, the United States Government at the then prevailing market price for such securities . . . .' (Emphasis supplied.) `Surplus funds' are defined for the purposes of this section as `funds in any general or special account or fund of the district held or controlled by the governing body of the district, which funds in reasonable contemplation will not be needed for the purposes intended within a reasonable time from the date of such investment.' See s. 218.345(4).
The hospital district clearly falls within the definition of `special district' contained in s. 218.31(5), F. S., for the purposes of part III, ch. 218, F. S., to mean a `local unit of special government, except district school boards and community college districts, created pursuant to general or special law for the purpose of performing prescribed specialized functions, including urban service functions, within limited boundaries.' Your letter, however, fails to provide sufficient information as to whether the district funds referred to in your letter would qualify as `surplus funds,' as defined in s. 218.345(4), for the purpose of the statute. If the district funds do, in fact, satisfy the definition of `surplus funds' contained in s. 218.345(4), then, under the specific provisions of s. 218.345(1)(b), the board of commissioners as the governing body of the district is expressly authorized to invest such funds in negotiable direct obligations of the United States Government at the then prevailing market rate for such securities. If, however, the funds are not `surplus funds' within the meaning of s. 218.345(4), the grant of authority contained in s. 218.345 is not applicable and, in the absence of any other provision in general law or in the district's enabling legislation, as amended, which authorizes such investments, the board of commissioners may not invest district funds in this manner.
Moreover, while s. 218.345, F. S., authorizes the board of commissioners as the governing body of the district to make such investments of `surplus funds' as defined therein, the statute does not authorize or empower the board of commissioners to delegate its investment authority. The authorization for such a delegation, if any, must be found elsewhere in other laws. Cf. AGO 079-9; see also part IV of ch. 218, F. S., the Investment of Local Government Surplus Funds Act, which authorizes, inter alia, special districts by their governing bodies to deposit surplus funds (defined in s. 218.403(3) for the purposes of part IV, ch. 218 as `funds in any general or special account or fund of a [special district] which in reasonable contemplation will not be immediately needed for the purpose intended') for investment in the Local Government Surplus Funds Trust Fund which is administered by the State Board of Administration on behalf of the participating special districts pursuant to the procedures established in part IV of ch. 218. The district's enabling legislation, ch. 27438, 1951, Laws of Florida, as amended, does not, however, appear to authorize the district's governing board to delegate its authority to invest district funds, nor am I aware of any provision in general law (other than part IV of ch. 218) which authorizes such a delegation of authority by a special district.
Prepared by: Joslyn Wilson, Assistant Attorney General