The Honorable Jacob D. Varn Secretary, Department of Transportation
QUESTION:
What is the proper disposition of excess funds in the Marco Island toll facility investment account held by the State Board of Administration?
SUMMARY:
Since all parties to the Lease-Purchase agreement have been paid or reimbursed (with the possible exception of the $1,200 mentioned in the Auditor General's Report) and it would be impossible to refund the moneys to those who paid the tolls in using the project, and no contractual or statutory direction exists for the disposition of the excess funds in the account or fund held by the State Board of Administration, these moneys must remain in the investment account or sinking fund held by that board subject to appropriation by the Legislature in accordance with the fiscal laws governing the budgeting and appropriation of state funds.
Pursuant to ch. 288, F.S., 1967, the Florida Development Commission (whose responsibilities were assumed by the Division of Bond Finance, see s. 215.63, F.S.), authorized issuance of revenue bonds for the purpose of the construction of the Marco Island Bridge and Causeway in Collier County in 1967. The Lease-Purchase agreement between the commission as Lessor and the Department of Transportation, as Lessee, provided that the department must pay to the commission as rentals and purchase payments all of the net tolls which the department collected from the operation of this project and the 20 percent surplus second gasoline tax funds accruing to Collier County under the provisions of s. 16, Art. IX, 1885 Florida Constitution (which was amended and continued by s. 9(c), Art. XII, 1968 Constitution). See s. 206.41(4)(b), F.S., 1979.
Section 3.02 of the Lease-Purchase agreement reads as follows:
 3.02 APPLICATION OF NET TOLLS. As provided in Section 1.03 hereof, after November 1, 1969, the Net Tolls received from the operation of the Project shall be paid monthly by the Department from the Collection Account to the Board for deposit into the Sinking Fund, herein created and established, until such time as all the Bonds and interest thereon have been fully paid and discharged or redeemed, or the redemption thereof has been duly provided for. Thereafter, the Department shall apply the Net Tolls for reimbursement as provided in Section 1.03 hereof.
 Section 1.03 of the Lease-Purchase agreement provides in pertinent part as follows:
 1.03 TOLLS COLLECTION; NET TOLLS. As soon as practicable the Department shall fix, establish and collect Tolls for the use of the Project, as defined herein, and shall continue to fix, establish and collect Tolls until the following events have occurred in the following order of priority:
 (1) Provision has been made for the payment or redemption of all outstanding Bonds, including any refundings thereof, and all interest thereon;
 (2) The Department has been fully reimbursed all amounts to which it is entitled hereunder; and
 (3) The total amount of Collier County Gasoline Tax Funds used for payment of principal of and interest on the Bonds, and maintenance of the Reserve Fund, as provided herein, has been fully repaid to Collier County. . . .
 After all the Bonds and interest thereon have been fully paid and discharged or redeemed, as provided hereafter, or the redemption thereof has been duly provided for, the Department shall withdraw all Net Tolls on deposit in the Collection Account, when received, and shall apply the same in the manner provided in this Section 1.03 until such time as the Department and Collier County have been repaid in full the amounts to which they are entitled as reimbursement under the provisions of Sections 4.01, 4.06, and 5.07 of this Agreement.
According to the Auditor General's Audit Report attached to your opinion request, the balance of the bonds issued to construct this project was retired effective November 1, 1978. The report indicated that the department had been reimbursed as of June 30, 1979 except for a small amount (approximately $1,200) and the county repaid as required in s. 1.03 and s. 4.03 of the Lease-Purchase agreement. However, the department had no contractual or statutory authority to continue collecting tolls after these obligations were met. It is well-settled that a state administrative agency or officer possesses no inherent power and may only exercise such authority as expressly or by necessary implication is conferred by law. See, e.g., 67 C.J.S. Oofficers s. 102; State ex rel. Greenberg v. Florida State Board of Dentistry,297 So.2d 628, cert. dismissed, 300 So.2d 900 (Fla. 1974); Florida Industrial Com'n v. National Trucking Co., 107 So.2d 397 (1 D.C.A. Fla., 1958); see also Lang v. Walker, 35 So. 78, 80 (Fla. 1903); Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944); AGO's 075-299, 071-28, 078-77, 078-94, 078-101, 078-135, 080-144. And, if any reasonable doubt exists as to the lawful existence of a particular power, it should not be exercised. See, e.g., White v. Crandon, 156 So. 303, 305 (Fla. 1934), Gessner v. Del-Air Corporation, supra. There must exist some basis in a statute for the exercise of any jurisdiction and power by an administrative agency or officer and such administrators may act only in the mode prescribed by statute. Edgerton v. International Company,89 So.2d 488, 490 (Fla. 1956).
Section 6.03 of the Lease-Purchase Agreement reads as follows:
 6.03 TITLE TO VEST IN STATE OF FLORIDA. When the Department has performed all the covenants and agreements hereunder and has paid the Rentals provided herein for the full term of this Agreement and such Rentals shall have been sufficient, as provided herein, for the final payment and discharge of all the Bonds to be issued by the Commission, and interest thereon, and the Department and Collier County have been fully reimbursed as provided herein, then the title and absolute ownership to all the Project shall thereupon immediately be vested in the State of Florida in fee simple; and the Commission covenants and agrees that it will deliver such deeds and conveyances to the Department as shall be necessary to vest full title and ownership of the Project in the State of Florida.
The language of the above provision indicates that the department is merely acting as agent and that title vests in the state. There seems to be no authority, then, to support the department's use of the funds. Rather, the tolls were collected after the authority to collect them expired and there is no provision indicating that surplus tolls remain under the department's control.
Since all parties to the Lease-Purchase agreement have been paid or reimbursed (with the possible exception of the $1,200 mentioned in the Auditor General's Report) and it would be impossible to refund the moneys to those who paid the tolls in using the project, and no contractual or statutory direction exists for the disposition of the excess funds in the account or fund held by the State Board of Administration, I conclude that these moneys must remain in the investment account or sinking fund held by that board subject to appropriation by the Legislature in accordance with the fiscal laws governing the budgeting and appropriation of state funds.
Prepared by: Barbara Staros Harmon, Assistant Attorney General