The Honorable Richard M. Weiss Clerk of the Circuit Court Polk County Courthouse Drawer CC-1 Post Office Box 9000 Bartow, Florida 33831-9000
Dear Mr. Weiss:
You ask substantially the following question:
May the supervisor of elections use county funds to purchase a membership in local chambers of commerce and to purchase tickets to luncheons and banquets hosted by community organizations such as a chamber?
In sum:
County funds may be used by the supervisor of elections to purchase memberships in local chambers of commerce, and to pay related expenses for attending meetings of the chambers and other community organizations in order to carry out the legislative mandate to the office of the supervisor to develop public-private programs to ensure the recruitment of skilled clerks and inspectors.
In your capacity to pre-audit the legality of all disbursements of county funds, you question whether the supervisor of elections may use public funds to pay membership dues to several local chambers of commerce.[1]
You also question whether the supervisor or designated employees of the supervisor's office may use public funds to purchase tickets to attend luncheons and banquets held by community organizations such as chambers of commerce. It has been proposed that the supervisor's involvement in community activities through local chambers and other civic organizations is essential to the recruitment of qualified individuals to serve as clerks and inspectors at the polls.[2]
The supervisor of elections in Polk County is a budget officer. You question whether the supervisor's use of county funds for such expenditures is authorized by the mandate in section 102.014(6), Florida Statutes. Section 102.014(6), provides:
"Supervisors of elections shall work with the business and local community to develop public-private programs to ensure the recruitment of skilled inspectors and clerks."
Like other constitutional county officers, the supervisor's powers are limited to those expressly granted by law or clearly necessary to facilitate the exercise of those expressly granted.[3] Thus, in considering the propriety of the expenditure of funds by a public officer, it is first necessary to determine whether the officer in question has been expressly authorized by law to expend the funds for the purpose at issue or whether such authority is necessarily implied in order to carry out a duty or function expressly imposed by law.[4]
While the determination of whether payment of a claim is legal must ultimately be made by the clerk of court and cannot be delegated, this office has previously offered observations regarding the expenditure of public funds for purposes that have been questioned.
In Attorney General Opinion 85-37, this office considered whether the governing board of a fire control district was authorized to purchase a membership in a yacht club for the district's chief. The chief requested a membership to provide a place to take visiting dignitaries for meals. This office could find no discernable direct benefit to the chief in carrying out his official duties, no benefit to the district resulting from the chief's membership in a yacht club, nor any support for the proposition that such a membership was necessary or essential in carrying out the statutorily imposed duties and responsibilities of the special district. It was concluded, therefore, that the district was not authorized to purchase the membership for its chief.
An earlier opinion, Attorney General Opinion 68-12, addressed the legality of a special district spending public funds for entertainment. Recognizing that such expenditures had been authorized by statutes and local laws led to the conclusion that the Legislature must expressly provide legislation authorizing the use of public funds for purposes of hospitality and entertainment. Absent such specific legislative authorization, this office found that the creation of special districts would not in and of itself indicate a need to carry on extensive programs of hospitality and entertainment.
In Attorney General Opinion 79-105, this office set forth a number of factors that must be considered in determining whether an expenditure of public funds is lawful. In that instance, the question related to travel expenses for a public official to appear before fraternal, social, professional or similar groups. Initially observing that such expenditures must be examined on a case-by-case basis, the opinion stated that the determinative factors were the identity of the public officer, the nature and scope of the particular duties and functions imposed by law upon that officer (both express and implied), and the purpose of the travel. This office found that an officer's travel expenses could be paid from public funds only when the travel was for a public purpose authorized by law to be performed by the agency or officer, was necessary for the conduct of official business, and was necessary for the performance of the officer's official duties.
In this instance, the supervisor of elections is directed to work with the business and local community to develop public-private programs to ensure that skilled inspectors and clerks are available for recruitment. While reasonable persons may differ as to how this mandate may be most effectively accomplished, it would appear that the use of public funds to establish and foster relationships with the local and business communities would be appropriate. There is no personal privilege inuring to the supervisor of elections as there was to the fire chief in Attorney General 85-37, nor does it appear that the employees of the supervisor's office are personally benefitting from their attendance at luncheons or banquets at which they promote the mandate to the supervisor of elections.
Accordingly, while ultimately it is the clerk of court who must determine the legality of an expenditure of public funds before a disbursement is made, it is my opinion that the supervisor of elections is authorized to expend public funds for memberships in local chambers of commerce and to attend local civic functions to facilitate the creation of public-private programs to ensure the availability of skilled clerks and inspectors.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, Art. VIII, s. 1(d), Fla. Const., providing: "When not otherwise provided by county charter or special law approved by vote of the electors, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds." See also, Alachua County v. Powers, 351 So.2d 32 (Fla. 1977) (clerk of court has authority and responsibility to perform auditing functions as arm of board of county commission in auditing records of constitutional officers, and as watchdog of the board in pre-auditing accounts of the board in determining legality of expenditures). But see, Op. Att'y Gen. Fla. 86-38 (1986) (clerk of court as ex officio county auditor not authorized to perform post-audit functions on the records of other constitutional officers).
[2] Materials included with your request indicate that a wide variety of activities take place at the chamber and civic functions attended by the supervisor or her staff, ranging from voter education, poll worker recruitment and outreach programs; voter registration drives have been organized and educational programs planned.
[3] See, Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944);White v. Crandon, 156 So. 303 (Fla. 1934); Harvey v. Board of PublicInstruction for Sarasota County, 133 So. 868 (Fla. 1931); and 67 C.J.S. Officers s. 190(a).
[4] Attorney General Opinion 78-101 (1978).