Ms. Julie B. Schutta Vero Beach City Attorney Post Office Box 1389 Vero Beach, Florida 32961-1389
Dear Ms. Schutta:
You ask substantially the following question:
May a municipality exempt certain categories of occupations from its occupational license tax where no statutory exemption is provided, without repealing the occupational license tax ordinance during the biennial review?
In sum:
A municipality has no authority to exempt certain categories of occupations from its occupational license tax absent a statutory exemption for the specific category. The biennial review of the municipality's occupational license tax ordinance may not be used to exempt certain categories of occupations from taxation, without specific statutory authority.
You state that the City of Vero Beach has an occupational license tax ordinance that contains only those exemptions listed in Chapter 205, Florida Statutes. The city questions, however, whether two specific occupations, private security guards licensed by the state and employed by an agency and cosmetologists employed by a salon, are exempt from the occupational license tax.
Chapter 205, Florida Statutes, allows municipalities to levy "an occupational license tax for the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction."[1]
Conditions imposed on the authority to levy an occupational tax include that it be based upon reasonable classifications and be uniform throughout any class.[2]
A further condition is contained in section 205.043(1)(b), Florida Statutes, as follows:
"Unless the municipality implements s. 205.0535 or adopts a new occupational license tax ordinance under s. 205.0315, an occupational license tax levied under this subsection may not exceed the rate in effect in the municipality for the year beginning October 1, 1971; however, beginning October 1, 1980, the municipal governing body may increase occupational license taxes authorized by this chapter. . . ."[3]
Section 205.0535(1), Florida Statutes, provides:
"By October 1, 1995, any municipality or county may, by ordinance, reclassify businesses, professions, and occupations and may establish new rate structures, if the conditions specified in subsections (2) and (3) are met. . . ."[4]
Section 205.0535, Florida Statutes, limits its application to municipalities or counties that acted before October 1, 1995, to reclassify businesses and occupations or establish a new rate structure. Where the Legislature has directed the manner in which something is to be accomplished, it effectively acts as a prohibition against its being done in another way.[5]
Thus, a municipality must have enacted an ordinance on or before October 1, 1995, to avail itself of the authorization in section 205.0535, Florida Statutes, to reclassify businesses, professions, and occupations, or to establish a new rate structure for its occupational license tax.[6]
Section 205.0315, Florida Statutes, states:
"Beginning October 1, 1995, a county or municipality that has not adopted an occupational license tax ordinance or resolution may adopt an occupational license tax ordinance. The occupational license tax rate structure and classifications in the adopted ordinance must be reasonable and based upon the rate structure and classifications prescribed in ordinances adopted by adjacent local governments that have implemented s. 205.0535. . . ."[7]
The Legislature has authorized those municipalities that have not adopted an occupational license tax ordinance by October 1, 1995, to do so with a rate structure aligned with neighboring local governments. Further, the Legislature has made provision for reviewing the rate structure every two years after the adoption of the occupational license tax ordinance. Section 205.0535(4), Florida Statutes, provides:
"After the conditions specified in subsections (2) and (3) are met, municipalities and counties may, every other year thereafter, increase by ordinance the rates of local occupational license taxes by up to 5 percent. The increase, however, may not be enacted by less than a majority plus one vote of the governing body."
In Attorney General Opinion 2000-63, this office considered whether a municipality was authorized by section 205.0535, Florida Statutes, to decrease the rates established in its occupational license tax ordinance for a specific classification. Noting that the Legislature's specific directions regarding rate revisions in section 205.0535 address only increases of the rates of local occupational license taxes, this office concluded that "[n]othing in that section authorizes a municipality to revisit a validly enacted rate increase prior to its scheduled biennial review or to make downward adjustments to individual classifications."[8]
(e.s.)
While municipalities have been granted broad home rule powers,[9] such powers do not include the authority to levy taxes or to provide exemptions therefrom.[10] Thus, a municipality must rely upon specific constitutional or statutory authority to exercise taxing powers.
As noted above, municipalities have been granted the authority to levy occupational license taxes for the privilege of engaging in or managing businesses, professions, or occupations within its jurisdiction. Several exemptions and partial exemptions are enumerated in Chapter 205, Florida Statutes.[11]
This office has consistently found that absent a specific statutory exemption from the occupational license tax, a municipality or county may not create new exemptions.[12]
In regard to private security guards, you cite to section 493.6107(5), Florida Statutes, as a potential exemption from the city's occupational license tax for such guards when they are employed by a licensed agency. Section 493.6107(5) provides:
"Payment of any license fee provided for under this chapter authorizes the licensee to practice his or her profession anywhere in this state without obtaining any additional license, permit, registration, or identification card, any municipal or county ordinance or resolution to the contrary notwithstanding. However, an agency may be required toobtain a city and county occupational license in each city and countywhere the agency maintains a physical office." (e.s.)
For purposes of Chapter 493, Florida Statutes, the term "[s]ecurity agency" is defined as "any person who, for consideration, advertises as providing or is engaged in the business of furnishing security services, armored car services, or transporting prisoners. . . ."[13] Whether the use of the term "agency" reflects a legislative intent to exclude individual licensees who are employed by a licensed agency is not clear. A review of the evolution of the requirement that a licensee obtain an occupational license provides some insight, but does not clearly resolve the question.
Chapter 63-340, Laws of Florida, codified as Chapter 493, Florida Statutes, created a regulatory scheme for the licensing of private investigative agencies, and watchman, guard or patrol agencies. Section 493.20, Florida Statutes (1963), authorized a licensee to practice his profession anywhere in Florida without having to obtain licenses throughout the state, "except he shall be required to obtain a city and county occupational license in each city or county where he maintains a physical office."
In Attorney General Opinion 63-103, this office interpreted that section and found that watchmen, guards, and patrolmen holding themselves out to the public and offering their services to the public as such were engaged in the performance of services that would subject them to city and county occupational license taxes. The opinion noted that when such persons were employed by commercial and industrial institutions and engaged entirely in the performance of such services for their employers, they would be considered a part of their employer's organization and not within the purview of the occupational license tax statute. This would not, however, have exempted individuals who worked for an agency that provided security services to others. At that time, a "[w]atchman, guard or patrol agency" was defined as "any person, firm, company, partnership or corporation, engaged in the business of furnishing for hire watchman, guard or patrolman services and which employs one or more full-time or part-time watchmen, guards or patrolmen."[14]
Section 493.20, Florida Statutes, was subsequently amended to require that all licensees, except Class "F" and Class "G" licensees, obtain a city and county occupational license in each city and county where the licensee maintains a physical office.[15] Individuals holding "Class F" licenses were unarmed watchmen, guards, or patrolmen contractors, while "Class G" licenses were for a statewide gun permit.[16] Section 493.20 was repealed, but the occupational license requirements were reenacted in section 493.325, Florida Statutes, stating that only "Class `A' and Class `B' licensees shall be required to obtain a city and county occupational license in each city and county where the licensee maintains a physical office."[17] A Class "B" license at that time was for engaging in business as a "watchman, guard, or patrol agency." For those individuals performing the "services of a watchman, guard, or patrolman," a Class "D" license was required.[18] (e.s.)
Section 493.325, Florida Statutes, was repealed and the pertinent language regarding occupational licenses for those individuals and entities licensed under Chapter 493, Florida Statutes, was placed in section 493.6107(4), Florida Statutes, much as it appears presently.[19]
Thus, there appears to have been a progression over the years to expose only agencies to occupational license taxes in the municipality or county in which a security agency's physical office is maintained. While the current definition of "security agency" may include a single person who advertises or engages in the business of furnishing security services, use of the term "agency" rather than "licensee" could reasonably be interpreted to distinguish those licensees who are employed by a security agency from those who are sole proprietors.
The courts of this state have consistently held that exemptions in a taxing statute are to be strictly construed against the taxpayer.[20]
Moreover, this office may not fashion an exemption that is not clearly intended. It may be appropriate, therefore, to seek legislative clarification on this matter in order to determine whether licensed security guards are exempt from local occupational taxes when they are employed by a licensed agency.
I have found no statutory provision that exempts cosmetologists from occupational license taxes when they are employed by a licensed salon. Had the Legislature intended to provide such an exemption it could have done so.[21]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 205.042, Fla. Stat.
[2] Section 205.043(1)(a), Fla. Stat.
[3] The remainder of section 205.043(1)(b), Fla. Stat., provides:
"The amount of the increase above the license tax rate levied on October 1, 1971, for license taxes levied at a flat rate may be up to 100 percent for occupational license taxes that are $100 or less; 50 percent for occupational license taxes that are between $101 and $300; and 25 percent for occupational license taxes that are more than $300. Beginning October 1, 1982, an increase may not exceed 25 percent for license taxes levied at graduated or per unit rates. Authority to increase occupational license taxes does not apply to licenses granted to any utility franchised by the municipality for which a franchise fee is paid."
[4] Section 205.0535(2), Fla. Stat., requires a municipality or county to establish an equity study commission to recommend a classification system and rate structure for local occupational licenses. Subsection (3) limits the percentage increases for certain license taxes and caps the total annual revenue that may be generated by increases in the fiscal year following adoption of the new rate structure, but excepts revenue increases due to the increase in the number of occupational licenses issued.
[5] Alsop v. Pierce, 19 So.2d 799 (Fla. 1944) (when controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way); White v. Crandon, 156 So. 303
(Fla. 1934); State ex rel. Reno v. Barquet, 358 So.2d 230 (Fla. 3d DCA 1978).
[6] See, Op. Att'y Gen. Fla. 96-83 (1996) (county foregoing option to enact new occupational license tax by October 1, 1995, not authorized to enact a new occupational license tax ordinance after that date).
[7] Section 205.0315, Fla. Stat., further provides:
"If no adjacent local government has implemented s. 205.0535, or if the governing body of the county or municipality finds that the rate structures or classifications of adjacent local governments are unreasonable, the rate structure or classifications prescribed in its ordinance may be based upon those prescribed in ordinances adopted by local governments that have implemented s. 205.0535 in counties or municipalities that have a comparable population."
[8] See, Op. Att'y Gen. Fla. 96-83 (1996) (county may only increase occupational license tax rate).
[9] See, s. 166.021, Fla. Stat., and Art. VIII, s. 2(b), Fla. Const. 
[10] See, e.g., Ops. Att'y Gen. Fla. 90-23 (1990) (city may not provide for the rebate of ad valorem taxes collected on newly annexed property absent constitutional or statutory authority); 80-87 (1980) and 79-26 (1979) (municipality has no home rule powers to levy excise or non-ad valorem taxes and exemptions; such taxing power must be authorized by general law).
[11] See, s. 205.054, Fla. Stat. (partial exemption for engaging in business or occupation in an enterprise zone); s. 205.063, Fla. Stat. (no separate occupational license required for vehicle used for sale or delivery of tangible personal property from a place of business on which a license has been paid); s. 205.064, Fla. Stat. (no occupational license required for farm, aquacultural, grove, horticultural, floricultural, tropical piscicultural, and tropical fish farm products); s. 205.065, Fla. Stat. (exemption for nonresidential persons who are licensed by the Department of Business and Professional Regulation); s. 205.162, Fla. Stat. (exemption for certain disabled persons, the aged, and widows with minor dependents); s. 205.171, Fla. Stat. ($50 exemption for disabled veterans of any war or their unremarried spouses whose business is carried on mainly through the personal efforts of the licensee); s.205.191, Fla. Stat. (no license required for churches); s. 205.192, Fla. Stat. (no license required for charitable, religious, fraternal, youth, civic, service, or other organization making occasional sales or fundraising when efforts are exclusively made by members of such organization and proceeds are used exclusively in the activities of the organization); and s. 205.193, Fla. Stat. (local license not required for mobile home setup operations).
[12] See, Ops. Att'y Gen. Fla. 2000-01 (2000) (city may not exempt real estate agents operating under real estate brokers from its occupational license requirement, absent specific exemption in Ch. 205, Fla. Stat.); 83-17 (1983) (real estate salesperson licensed and regulated by the state and operating under the supervision of a broker is subject to occupational license tax); Inf. Op. to Ms. Julie B. Schutta, January 31, 2001 (real estate salespersons appropriately included within scope of occupational license tax ordinance).
[13] Section 493.6101(18), Fla. Stat.
[14] See, s. 1(2), Ch. 63-340, Laws of Fla.
[15] See, s. 4, Ch. 75-230, Laws of Fla.
[16] See, s. 493.06(1)(f), Fla. Stat. (1975), prescribing license fees for "Class F. Unarmed watchman, guard or patrolman contractor — $10;" and s. 493.06(1)(g), Fla. Stat. (1975), prescribing the license fee for "Class G. Statewide gun permit — $25. Issuance of this permit shall not authorize the possession of a concealed weapon."
[17] See, s. 1, Ch. 80-268, Laws of Fla., creating s. 493.022, Fla. Stat., codified as s. 493.325, Fla. Stat.
[18] See, s. 493.004(2) and (5), Fla. Stat. (1980).
[19] See, s. 10, Ch. 90-364, Laws of Fla., repealing s. 493.325, Fla. Stat., and s. 2, Ch. 90-364 Laws of Fla., creating Part I, Ch. 493, Fla. Stat., containing subsection 493.6107.
[20] See, e.g., State Department of Revenue v. Anderson, 403 So.2d 397
at 399 (Fla. 1981), on remand, 405 So.2d 242 (Fla. 3d DCA 1981); State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson,286 So.2d 529 (Fla. 1973); Adams Construction Equipment Company v. Hausman, 472 So.2d 467 (Fla. 5th DCA 1985) (tax exemptions are to be strictly construed against party claiming them).
[21] See, e.g., s. 205.196, Fla. Stat., stating that no occupational license is required in order to practice the profession of pharmacy.